(107 App. Div. 457.)

NEWTON v. JAY et al.

(Supreme Court, Appellate Division, First Department.  September 29, 1905.)

1. FRAUDULENT CONVEYANCES—DEED OF TRUST—INTEREST OF SETTLOR.

A deed of trust by a woman in contemplation of marriage, she having no debts and not contemplating the incurring of liability, the trustees to invest the property and pay the income to her for life and thereafter to her husband for life, if he survived her, with the principal over to her issue on his death, is not fraudulent conveyance or invalid as to subsequent creditors.

2. TRUSTS—ACTIVE OR PASSIVE—CONSTRUCTION.

An active and not a passive trust, within Rev. St. (1st Ed.) pt. 2, c. 7, tit. 2, § 1, is created by a deed of trust to sell and reinvest, and to pay to the grantor the income and such part of the principal as the trustee may deem proper, and after her death the principal over to her issue or such persons as she may designate by her will.

3. SAME—MORTGAGE—TRUST PROPERTY.

An equitable lien on the interests of the beneficiaries under a deed in trust to sell the property, invest the proceeds, and pay the income to the grantor for life, with the principal over to her children after her death, is created by the mortgage of the property by the grantor and her children, though the aid of a court of equity is necessary to establish the lien on the trust funds.

4. SAME—LIEN ON TRUST FUND—ENFORCEMENT.

The complaint will be sustained on the theory that the suit is one in equity to establish and enforce an equitable mortgage; it alleging the giving to defendants of a deed of trust to invest the property and pay the income to the grantor for life, and on her death the principal to her children, the subsequent giving by the grantor and her children to plaintiff's testator of a mortgage on the property, concluding with an allegation, not warranted by the facts alleged, that the trust deed was fraudulent and void, and, after praying that the trust deed be set aside as fraudulent, praying that plaintiff's lien be established against the trust funds and the trustees be decreed to pay the claim therefrom.

5. SAME—COMPLAINT—ALLEGATION AS TO JUDGMENT.

The allegation of the complaint, in an action against trustees to establish a lien on the trust fund, the beneficiaries having given a mortgage thereon to plaintiff's testator, that plaintiff recovered judgment on the debt against the beneficiaries, will be construed as a mere allegation of the ownership of the claim by plaintiff and the conclusive establishment of the amount of liability.

6. EXECUTORS—RIGHT TO SUE.

Plaintiffs, foreign executors, do not sue as such, which they could not do but by virtue of ownership of the debt, where in the foreign country they got judgment on the debt secured by the mortgage of the beneficiaries on trust property, the lien of which they seek to establish and enforce by the present suit.

7. SAME—OWNERSHIP AS TRUSTEES—COMPLAINT.

The complaint of foreign executors, in a suit to enforce a mortgage lien, shows ownership in them as trustees of the debt sued on, without setting out the will of their testator, it alleging that a debt and the mortgage securing it were assigned to their testator; that after his death they, as his executors, recovered judgment against the mortgagors, establishing their liability and the extent thereof; that by virtue of the provisions of the will the mortgage security, claim, and judgment became part of the residuary estate, which passed to them as trustees; and that the claim, judgment, and mortgage are now owned by them as trustees.

Appeal from Special Term, New York County.

Suit by Frederick William Newton, surviving executor and trustee under the will of Thomas Connock Elliott, deceased, against William Jay and another, substituted trustees for Anna Benkard Hunt under a deed of trust of July 31, 1872, and others. From an interlocutory judgment overruling their demurrer to the complaint, said substituted trustees appeal. Affirmed.

The defendants allege that on the 31st day of July, 1872, the defendant Anna Benkard Hunt, then Anna Benkard, in contemplation of marriage with one Percy Hunt, an alien subject or citizen of Great Britian, made and executed an agreement in writing, with three trustees, residents of the state of New York, wherein and whereby for a valuable consideration she bargained, sold, assigned, transferred, and set over unto them, and to their successors and assigns, forever, certain real estate situate in the city of New York, being all of the real estate owned by her, together with the rents, issues, and profits thereof, and certain personal property mentioned in a schedule thereto annexed, and all the personal property owned by her, excepting furniture, wearing apparel, jewelry, and personal ornaments, with the appurtenances, to have and to hold, upon trust to sell and reinvest the proceeds, and to hold and manage, collect, and receive the interest, income, and profits, and to pay and apply the net income therefrom to her own use during her life, and from time to time to pay her such part of the principal of the proceeds as they should deem proper, "and upon and after" her death "to pay and divide the said real and personal estate, or the proceeds thereof, to and among such person or persons or bodies corporate, and in such relative shares, estates, or proportions as she, the party of the first part, shall by her last will and testament, or instrument in writing in the nature of a last will and testament, designate and appoint, and, in default of any lawful designation or appointment by the said party of the first part, then to pay and divide the said real or personal property, or the proceeds thereof, among such person or persons as under the law of the state of New York shall then be the heirs at law of the said party of the first part, and in the same estates, shares, and proportions such heirs at law would be entitled thereto if the same were all real estate situate in the state of New York and the said party of the first part had died intestate, seised and possessed thereof in fee simple and not married," and upon the further trust to improve the real estate and partition the same with co-owners as therein directed, with power to them, or the survivor of them, to appoint their successors in the event of death, resignation, or incapacity, covenanting on her part and on the part of those deriving any interest thereunder in the usual manner for further conveyances, transfers, and assurances "for the better or more effectually vesting and confirming the premises hereby intended to be granted in and to the said party of the second part, their successors and assigns, for the purposes above mentioned, as by the said parties of the second part, their successors and assigns, shall be reasonably devised or required"; that the instrument contained a provision by which the trustee accepted the trust and covenanted forthwith to perform the same, each to be liable only for his own acts; that the declaration of trust was duly acknowledged on that day, and the trustees in fact accepted the trust and took possession of the property; that on the 13th day of November, 1879, the original trustees resigned, having previously advanced to said Anna Benkard Hunt the sum of $50,000 of the principal of the trust fund, and one Alonzo C. Munson and the appellant William Jay were duly substituted as trustees in their place and stead, and on the 6th day of January, 1880, the original trustees transferred and assigned to them real and personal property belonging to the estate of upwards of $225,000, and they accepted and entered upon the performance of their duties as substituted trustees; that on the 18th day of November, 1879, said Anna Benkard Hunt entered into an agreement with said substituted trustees by which she purported to execute the power of appointment reserved to her in said instrument, designated "a deed of settlement," reciting the execution of said deed of settlement and some of the terms and conditions thereof, that the

original trustees desired to and were about to be relieved of their duties as trustees, and were to be superseded by said Munson and Jay, who were to be appointed by the retiring trustees, and that the retiring trustees had exercised their discretion by making said advancement to the settlor, upon condition, however, that she then execute the power of appointment reserved to her, and designate and appoint by deed under seal the persons to whom the estate should be paid over, distributed, and divided at her death, which she had determined to do, provided that, in consideration of the premises, and of said advancement, she thereby designated and appointed that the trustees or their successors in office at the time of her death should hold the trust estate upon the same terms and conditions as in the deed of trust provided, and, after paying the necessary costs, charges, and expenses of the care and maintenance of the estate out of the rents, issues, and profits thereof, should pay the balance of said rents, income, and profits to her husband during the term of his natural life, and upon his death should assign, transfer, convey, and set over the real and personal estate "unto such children of the said party of the first part, and to the issue of such of them as shall have died, in equal shares, per stirpes and not per capita, absolutely and forever," reserving to her, however, the right to vary that disposition by last will and testament, or an instrument in the nature thereof, by directing that a certain part of the annual income shall be paid to her children during the life of her husband, and that the estate upon her husband's death should be set over unto one or more of her children or their issue, and in the event of the death of all her children without issue in the lifetime of her husband, or of there being no child or children, or issue of a child or children, living at the time of her death, then she reserved to herself the absolute right of otherwise disposing of the trust estate by last will and testament, or instrument in the nature thereof; that this instrument was also duly acknowledged; that the appellant has ever since his said appointment continued to act as a trustee, and on the 28th day of May, 1890, in an action in the Supreme Court charged himself as sole acting trustee with the sum of $229,665.80 in cash and securities, consisting almost wholly of bonds secured by first mortgages in the city of New York; that the resignation of said Munson as trustee was accepted pursuant to a decree in said last-mentioned action, and he thereupon assigned and conveyed the trust property to the appellant Jay as trustee; that on the 26th day of June, 1890, the appellant Winthrop, likewise pursuant to said decree, was substituted for said Munson and accepted the trust, and Jay, as trustee, thereupon assigned and transferred the trust property to Winthrop and himself as trustees; that the personal property held by them as such trustees is of the value of at least $200,000; that said Anna Benkard Hunt has for a long time resided abroad, and now resides with her children at the city of Paris, France; that on the 1st day of July, 1898, after the death of her hus-band, said Anna Benkard Hunt obtained from one Thomas Charles Line, a resident of England, a loan of £9,200 sterling, and as security for the repayment thereof she and her three children who were of age (the fourth, the defendant Rupert Herbert Hunt, being a minor) executed a mortgage, declared to be supplementary to said original deed of settlement and to said agreement between her and the trustees, Jay and Munson, on the 18th day of November, 1879, to which quite full reference is made, reciting that the appellants were trustees at that time, and that the children have agreed with their mother "to take up money on a joint account," and for that purpose have requested her to release the power of appointment and to join in the mortgage of the trust estate as therein set forth, and that the mortgagee has agreed to lend to the mortgagors on joint account said sum of £9,200 sterling upon condition that repayment of principal and interest be secured as therein provided, and providing that in consideration of the receipt of said sum the mortgagors covenant to repay the principal and interest, and each as to his separate interest, beneficial or otherwise, under said deed of settlement and agreement supplementary thereto, granted, appointed, bargained, assigned, transferred, and set over to the mortgagee, his heirs, executors, administrators, or assigns, all of the real and personal estate and all the trust estate comprised in or then subject to said trust, or either of them, to hold unto the use of the mortgagee,

his heirs, executors, administrators, and assigns, subject to the proviso for redemption thereinafter contained, and said indenture further witnessed that in pursuance of the agreements upon which said loan was made Mrs. Hunt, at the request and with the concurrence of her said adult children, released unto them and all other persons interested in the trust estate the further exercise of the power of appointment, "to the end and intent that the said trust estate shall vest absolutely, subject to the life interest of the said Anna Benkard Hunt, in" her four children in equal shares, and said adult children mutually covenant to divide equally, notwithstanding any appointment; that the mortgage contained a provision for redemption by repaying the indebtedness and interest during the month of September of the following year, and the mortgagors, in behalf of themselves, their heirs, executors, administrators, and assigns, covenanted "that they, and all and every other person or persons whatsoever lawfully or equitably deriving any estate, right, title, or interest of, in, or to the hereinbefore-mentioned premises by, from, under, or in trust for her, him, or them, shall and will, at any time or times hereafter, make, do, and execute, or cause or procure to be made, done, or executed, all and every such further and other lawful and reasonable acts, conveyances, assurances, and transfers for the better or more effectually vesting and confirming the premises hereby intended to be granted in and to the mortgagee, his heirs, executors, administrators, and assigns, for the purposes above mentioned, as by the parties requiring the same shall be reasonably desired or required," and it was further declared that the agreement for the loan was made in England, and that the mortgage should be construed according to the English law; that on the 1st day of January, 1899, the mortgage and the indebtedness secured thereby, and the securities mentioned therein, were duly assigned by the mortgagee to Cartmell Harrison for value, who on the 4th day of January, 1899, and on the 5th day of June, 1899, respectively, duly assigned the same to Thomas Connock Elliott as security for a loan of £6,000 and £8,000, respectively, together with all the rights of the assignor; that no part of the loan secured by the original mortgage, or of the loans secured by the assignment thereof, has been paid; that said Elliott died on the 13th day of January, 1902, leaving a last will and testament naming the plaintiffs as executors and trustees, and devised and bequeathed the residuum of his estate to them in trust; that the will was duly admitted to probate on the 20th day of February, 1902, in the principal probate registry of His Majesty's High Court of Justice in England, having jurisdiction thereof, and administration on the estate was duly granted to the plaintiffs; that the plaintiffs have duly accepted the trusts created by the will, and that their claim in this action forms part of the trust created by the will, and that by virtue of the will and the trust provisions thereof the plaintiffs became the owners of the claim against the defendants set forth in the complaint, and of the securities accompanying the same and forming part thereof therein mentioned, and as such trustees the plaintiffs likewise hold and own the judgment thereinafter set forth under the trust provisions of said will; that thereafter the plaintiffs, as such executors, brought an action in the High Court of Justice, King's Bench Division, of England, a court of general jurisdiction, against the mortgagors, except one of the children who had died in the meantime, for the recovery of the money loaned and secured to be paid by the mortgage; that the defendants duly appeared in the action, and plaintiffs recovered a judgment against them on the 27th day of October, 1903, for the sum of £11,373 10s. sterling and £363 6s. 9d. costs taxed on the 18th day of December, 1903, no part of which has been paid; that there remains due and owing on account of said loan the amount of said judgment and interest thereon; that the defendants sued individually all reside in Paris, and have no intention of coming to the United States; that none of the mortgagors have property in England upon which execution could be levied, and that the plaintiffs have no remedy, except this action in equity against the trustees and the trust estate held by them in this state; and that the defendants sued individually have no means other than said trust estate with which to pay the same, have admitted their inability to pay, and have urged the trustees to make payment out of the principal of the trust estate, but that the latter refuse so to do.  The complaint then contains an allegation

that the trust deed of settlement is void as to personal property as against all of the creditors of said Anna Benkard Hunt, including the plaintiffs, because of the fact that it was made by her for her own benefit, and that she reserved an advantage out of the personal property transferred to the trustees, and that it was and is fraudulent and void, both as to real and personal property, as against the plaintiffs as her creditors, by reason of the fact that it was a voluntary conveyance of all of her property for her own benefit. Judgment is then demanded, first, that the trust deed be declared void, so far as it affects the claim of the plaintiffs in this action; second, that the mortgage security held by the plaintiffs be impressed upon and made a lien upon the trust funds and property in the hands of the defendant trustees under the deed of trust to the extent of the amount recovered by said plaintiffs in the Court of King's Bench, High Court of Justice of England, aforesaid, and interest, and the said defendant trustees be directed to pay and discharge the same out of any of the trust property in said trust in their hands, and to that end that the said defendant trustees, or their successors in interest, may be required to make full accounting as such trustees of all property held under said trust, and of the "rents, issues, or profits thereof"; third, that a receiver be appointed pendente lite; fourth, that the amount of any judgment recovered by the plaintiffs herein against the defendants be declared a lien upon real property, the same, as if said deed or settlement had never been made; fifth, that the trustees be enjoined from paying out interest or profits until the further order of the court; and, sixth, for other and further relief. Pending the action the plaintiff Percy Elliott Bateman, one of the trustees, died, and by an order the action was continued in the name of the survivor.

Argued before O'BRIEN, HATCH, PATTERSON, and LAUGHLIN, JJ.

Flamen B. Candler, for appellants.
S. B. Livingston, for respondent.

LAUGHLIN, J. It is contended by the appellants that it is essential to the maintenance of this action that the plaintiffs should have first recovered judgment upon their claim in the courts of this state and have issued execution thereon, and that the same was returned wholly or in part unsatisfied; and Dittmar v. Gould, 60 App. Div. 95, 69 N. Y. Supp. 708, Id., 69 App. Div. 615, 74 N. Y. Supp. 1124, and kindred cases are cited as authority therefor. The learned judge at Special Term attempted to distinguish Dittmar v. Gould upon the ground that therein there was no allegation of fraud, while here there is, and that in his opinion equity has inherent jurisdiction of an action by a general creditor to reach equitable assets upon which neither an attachment nor an execution could be levied, and that such jurisdiction is neither limited nor controlled by the provisions of Code Civ. Proc. §§ 1871–1879. It is unnecessary to discuss the proposition, which received able and exhaustive consideration in Dittmar v. Gould, whether in any case a court of equity has jurisdiction before judgment and execution to entertain an action by a general creditor to reach equitable assets upon the ground of a fraudulent transfer; for its decision is not essential to a determination of this appeal, and the views of the members of the court might not be in accord thereon. The facts alleged do not show either actual or constructive fraud. It does not appear that the settlor, at the time she made the deed of settlement, had any creditors or contemplated incurring liability; and neither the plaintiffs nor their assignors became her creditors until the expiration of

30 years thereafter. The deed was made by an American citizen in contemplation of marriage with a foreigner, a subject of Great Britain. The marriage was consummated, and the parties lived abroad, doubtless as she expected. Under the laws of England, which would be controlling as to her personal property, if she had not disposed of it in this or some other manner, at that time it would have become property of the husband. Having a private fortune, she desired to preserve it, as against her husband and against the foreign law, for her own benefit during life, for the benefit of her husband thereafter during his life, and with the principal over to her issue. This was not forbidden by law, and the object was commendable. The facts alleged, therefore, do not render the trust deed invalid. Wood v. Jackson, 8 Wend. 10–33, 22 Am. Dec. 603; Beardsley v. Hotchkiss, 30 Hun, 605; Id., 96 N. Y. 201; Johnston v. Spicer, 107 N. Y. 185–191, 13 N. E. 753; Borland v. Welsh, 162 N. Y. 104, 56 N. E. 556; Matter of Miller, 77 App. Div. 473, 78 N. Y. Supp. 930.

Manifestly, in no view of the case could the declaration of trust be invalid as to her issue, in whom the remainder was contingently vested upon their birth and became vested absolutely upon the execution of a relinquishment of the exercise of the power of appointment, subject only to her life estate; the husband having died and possession being postponed until her death. Nor was it void because she reserved an interest for her own benefit during life. It was not a passive trust, within the provisions of the statute in force at the time (Rev. St. [1st Ed.] pt. 2, c. 7, tit. 2, § 1), but rather an active trust, founded on a good consideration; and the reservation of an interest for herself was only incidental and partial. Curtis v. Leavitt, 15 N. Y. 9, 114, 123, 147, 149, 176, 204, 295; Delaney v. Valentine, 154 N. Y. 692–701, 49 N. E. 65; Rome Exchange Bank v. Eames, 4 Abb. Dec. 83. Her beneficial interest might be reached in equity and appropriated to the payment of the claims of her judgment creditors, but it could not be set aside as either fraudulent or void. It was assignable absolutely or as security. Schenck v. Barnes, 156 N. Y. 316, 50 N. E. 967, 41 L. R. A. 395; Raymond v. Harris, 84 App. Div. 546, 82 N. Y. Supp. 689. Moreover, if the trust deed were fradulent and void as alleged, then as to the personal property, which is all the estate now consists of, the trust deed could be disregarded, and the property could be attached or an execution levied thereon, the same as property fraudulently transferred by a bill of sale. In that view of the case there was no necessity of appealing to equity, and, as jurisdiction could be obtained by attachment, there was no possible excuse for resorting to equity. The allegations that the deed was fraudulently made, not being supported by the facts alleged, must be regarded as legal conclusions not warranted by the facts, and therefore not admitted by the demurrer. Talcott v. City of Buffalo, 125 N. Y. 280, 284, 26 N. E. 263; Greeff v. Equitable Life Assurance Society, 160 N. Y. 19, 29, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659; Kittinger v. Buffalo Traction Co., 160 N. Y. 377, 387, 54 N. E. 1081.

I am of opinion that the action may be maintained upon the theory that the plaintiffs had a lien upon the trust property for the repayment

of the loan, and that they are entitled to have their lien declared against the trustees and the securities in their possession, and to have the trustees directed to pay the same, as the beneficiaries of the trust all appear satisfied should be done. The facts concerning the loan and the execution of the mortgage are all pleaded, and they clearly show that an equitable lien was given upon all of these trust funds, so far as the mortgagors could give the same. The mortgage represented every interest, except the interest of one of the children, who was then an infant. Upon the execution of the deed of appointment and the relinquishment of the right to further exercise the power of appointment, the interests of the children, which were theretofore contingent, became vested, subject only to the life estate of their mother; the legal title, however, being in the trustees. The interest, therefore, of the mother and other children in these trust funds, was subject to the lien of the mortgage, payment of which may be enforced against their interests. Raymond v. Harris, 84 App. Div. 546, 82 N. Y. Supp. 689; Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2, §§ 11, 13, 28, 33, 35. There are conflicting allegations in the complaint, in that the existence of the lien in favor of the plaintiff is quite fully and at length alleged, and then at the close it is alleged that the trust deed was fraudulent and void; and there are inconsistent conflicting demands for relief, in that it is prayed that the trust deed be set aside as fraudulent and void, and it is also prayed that the plaintiffs' lien be established against the trust funds, and that the trustees be decreed to pay the claim therefrom. There being no facts alleged to warrant relief upon the ground of fraud, and there being facts alleged to warrant the equitable relief demanded, I am of opinion that the complaint should be sustained upon the theory that it is a suit in equity to establish and enforce the lien of this equitable mortgage. It matters not that the action is not in form to foreclose a lien upon real estate, for it does not appear that any of the trust property consists of real estate at the present time or when the mortgage was executed. The mortgage does not appear to have been recorded, and it is, perhaps, too general in its description of the property to be recorded, or, if recorded, either as a mortgage on realty or by filing it as a chattel mortgage, to afford protection to the mortgagee as against innocent purchasers. Moreover, it was not given by the trustees who hold the legal title, and therefore the aid of a court of equity is required to establish it as a lien upon these trust funds. As has been observed, the trust funds appear now to consist of personal property only. The trustees are under the direction of the court, and, if the lien be established against the trust funds, it will be competent for the court to give directions to the trustees concerning the payment thereof out of the interest against which the lien is established. The lien is valid as between the parties, and is enforceable in equity.

This is not an action over on the judgment recovered in the English court. The allegations of the complaint concerning the recovery of judgment should be construed as mere allegations of ownership of the claim by the plaintiffs, and that the amount of the liability has been conclusively established between the parties. It is doubtful whether the costs in the English judgment are recoverable in this action, as the

lien only covers the money loaned and interest; but the extent of plaintiffs' right of recovery is not now before us for decision.

It is contended that the plaintiffs have no legal capacity to sue. According to the allegations of the complaint, the plaintiffs do not sue here in their representative capacity as executors. Being foreign executors, they could not sue as such in this state. The indebtedness for which the mortgage was security merged in the foreign judgment, which, aside from the costs, fixes the amount of the lien; for the collateral followed the debt (3 Pomeroy, Eq. Juris. [3d Ed.] § 1210), and established ownership in them as executors. The action is brought, therefore, not by virtue of the foreign letters, but by virtue of this ownership of the debt, the same as if they had as executors or trustees loaned the money and were suing to enforce the security, and not like administrators or executors suing in their representative capacity for the estate. Bonilla v. Mastre, 34 Hun, 551; Matter of McCabe, 84 App. Div. 145, 82 N. Y. Supp. 180, affirmed 177 N. Y. 584, 69 N. E. 1126. See, also, Maas v. German Savings Bank, 73 App. Div. 524–527, 77 N. Y. Supp. 256, affirmed 176 N. Y. 377, 68 N. E. 658, 98 Am. St. Rep. 689; Mabon v. Ongley Elec. Co., 156 N. Y. 196, 50 N. E. 805; T. G. T. Co. v. C., B & Q. R. R. Co., 123 N. Y. 37, 25 N. E. 198.

The learned counsel for the appellants further contends that the allegations of the complaint are insufficient to show ownership in the plaintiffs as trustees, and urges that the provisions of the will should have been set forth. It is alleged that the mortgage and the indebtedness were assigned to their testator; that after his death they as his executors recovered a judgment against the mortgagors establishing the liability and extent thereof; that by virtue of the provisions of the will this security, claim, and judgment became part of the residuary estate, which passed to them as trustees; and that the claim judgment and mortgage are now owned by them as trustees. We are of opinion that these allegations are sufficient. In alleging the ownership of personal property, chattels, or choses in action, it is not necessary to allege the facts showing the course of title further than has been done in the case at bar.

It follows, therefore, that the judgment should be affirmed, with costs.

O'BRIEN. P. J., and HATCH, J., concur. PATTERSON, J., concurs in result.