(59 Misc. Rep. 633.)

## NEWTON v. HUNT et al.

(Supreme Court, Special Term, New York County.   June, 1908.)

1. JUDGMENT—COURTS OF FOREIGN COUNTRIES—CONCLUSIVENESS.

An English judgment, though founded on presumptive evidence at variance with the rule of the courts of New York, will be given full effect within the established rules of comity; it appearing that the courts of England recognize and give effect to judgments in personam rendered by the New York courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1519, 1521.]

2. SAME—PERSONS CONCLUDED.

Where the receipt of a loan by mortgagors, who were the cestuis que trust of a trust deed of the property mortgaged, has been established by an English judgment as against them, it is not open to dispute by the American trustees, notwithstanding their nonjoinder in the foreign suit to establish the debt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1521.]

3. TRUSTS—TRANSFER OF BENEFICIAL INTEREST.

The beneficial interest, reserved in the settlor of a trust made in contemplation of her marriage, may be alienated by her.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 198.]

4. MORTGAGES—PROPERTY COVERED—BENEFICIAL INTEREST.

A mortgage of the share to which each mortgagor might become entitled under trust deeds and "as beneficial owner" covered the beneficial interest reserved in the settlor of the trust.

5. TRUSTS—RIGHTS OF CREDITORS OF BENEFICIARY—CONTINGENT REMAINDER.

A woman about to marry settled her property in trust to pay the income to herself for life, and on her death the principal to be paid to her children and the issue of any deceased child, per stirpes. Subsequently she and all but one of the children mortgaged their interests to secure a loan. Held, that since the child which did not join in the mortgage had a contingent remainder in the entire estate, dependent on the possible death of the other children without issue prior to their mother's death, the mortgagees could not enforce their rights against the principal of the trust fund.

6. POWERS—POWER OF APPOINTMENT—EXERCISE.

A power to appoint by will may not be exercised by deed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Powers, § 122.]

7. SAME—RELINQUISHMENT.

A covenant in a mortgage, whereby the settlor of a trust expressed her intention to exercise her reserved power of appointment of the remainders by will as between her children, so far as to vest the remainders in them equally, did not operate as a relinquishment of the power to appoint in unequal shares.

8. SAME—RELEASE—"BENEFICIAL POWER."

Under 1 Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2, § 79, declaring a general or special power beneficial, where no person other than grantee has by the terms of its creation any interest in its execution, a power reserved to the settlor of a trust of appointment of remainders by will among her children is not a general beneficial power, but a power in trust, and cannot be released.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 1, pp. 748–749.]

9. SAME.

A settlor in an original deed of trust reserved to herself a general power to dispose of the remainder of the corpus to any person. Subsequently the trust agreement was materially changed, with the approval of the

court, in the course of a proceeding taken for the resettlement of the
trust. Under the original trust deed the trustees had power, in their
discretion, to make advances from the corpus to settlor, and the resettle-
ment was to effectuate a condition upon which the trustees had so far
exercised this discretion as to advance a certain amount to settlor; this.
condition, as recited by the decree, having been "that she shall upon re-
ceiving [the sum advanced] exercise the power of appointment to her re-
served * * * and * * * appoint by deed under seal the person to
whom said estate is to be paid over * * * at her death." Agreeably
to this arrangement the settlor exercised her power of appointment, and
appointed the remainders to her children, reserving a general power of ap-
pointment in case of the death of all her children without issue prior to
her own death and a power to make appointment among their living chil-
dren or their issue in unequal shares by will. *Held* that, to satisfy the
reasonable meaning of the statute of uses and trusts, the "creation" of
the power of unequal appointment among her children must be deemed
to have taken place, not when the original deed of trust was executed,
but when the terms of the resettled trust deed were defined and approved
by the judgment of the court.

10. SAME—CHARACTER OF POWER IN TRUST—WHAT LAW GOVERNS.
    The character of a power in trust and the right of the donee to release
it present questions to be determined by the laws of the state where the
property is, not the law of the donee's domicile, since they affect more
than the mere personal right of the donee, and relate to the devolution
of title to and ownership in real and personal property.

11. MORTGAGES—FORECLOSURE—COSTS.
    Where a mortgage declared that it was made in England, and should be
in all respects interpreted by and effective according to English law, the
costs of an action at law to establish the debt being recoverable under the
mortgage in that jurisdiction and attached to the debt for the purposes
of resort to the security, such costs will be included in an action in New
York to establish the mortgage lien.

Action by Frederick William Newton, surviving executor and trus-
tee under the will of Thomas Connock Elliott, deceased, against Anna
Benkard Hunt and others, to establish and enforce a lien against the
interest of certain of defendants in the trust estate held by the de-
fendants William Jay and Egerton L. Winthrop, Jr., as trustees.
Finding for plaintiff.

S. S. Livingston, for plaintiff.
Flamen B. Candler and R. W. Candler, for defendant trustees.
J. Frederic Kernochan, for defendants Anna B. Hunt, Lillian C.
Hunt, and Reginald S. Hunt.
Carter, Ledyard & Milburn, for defendant Rupert H. Hunt.

BISCHOFF, J. The determination upon the demurrer to the com-
plaint in this action, as announced by the Appellate Division (New-
ton v. Jay, 107 App. Div. 457, 95 N. Y. Supp. 413), renders it un-
necessary for me to discuss the broad question as to the maintainability
of the action upon the facts pleaded and proven; and, in view of the
full statement of facts contained in the reported case, I refrain from
a detailed review of the circumstances out of which the litigation
arises. As ruled upon the trial, I take the record of the English judg-
ment to be conclusive as to the receipt of the loan by the mortgagors.
While the English court pronounced its judgment through a resort to
presumptive evidence at variance with the rule of this forum, still

the judicial determination is to be given full force and effect within the well-established rules of comity, it appearing that the courts of England recognize and give this effect to judgments in personam rendered by the courts of this state (Hilton v. Guyot, 159 U. S. 113, 16 Sup. Ct. 139, 40 L. Ed. 95; Ritchie v. McMullen, 159 U. S. 235, 16 Sup. Ct. 171, 40 L. Ed. 133; Dunstan v. Higgins, 138 N. Y. 70, 33 N. E. 729, 20 L. R. A. 668, 34 Am. St. Rep. 431); and the fact thus established by the foreign adjudication, as against the cestuis que trust, is not open to dispute by the trustees, notwithstanding their nonjoinder in the foreign suit to establish the debt. Nicholas v. Lord, 118 App. Div. 800, 103 N. Y. Supp. 681.

The question sought to be raised as to the power of Mrs. Hunt to alienate her beneficial interest in the subject of the trust I do not take to be open to independent discussion. Having herself created the trust, her reserved interest was alienable within the rule of Schenck v. Barnes, 156 N. Y. 316, 50 N. E. 967, 41 L. R. A. 395; and the applicability of this rule to the case at bar has been determined by the Appellate Division in the course of the pronouncement upon the issues of law actually before that court. Newton v. Jay, supra. Noyes v. Blakeman, 6 N. Y. 567, cited for the defendants, proceeded upon a general discussion of the nonalienability of beneficial interests, with no regard to the distinction noted in Schenck v. Barnes; and the former case is no authority for limiting the rule adopted in the latter, so far as to except a trust made in contemplation of marriage. That the mortgage in suit did cover the interest of Mrs. Hunt is, I think, clear. The words of the instrument, on this head, are:

"And this indenture also witnesseth that, for the consideration aforesaid, each of them, the mortgagors, as to the share to which she or he is or may become entitled under the said indentures [referring to the deeds of trust], or in any other manner whatsoever, and as beneficial owner, doth hereby grant, appoint, bargain, sell, assign, transfer, and set over unto the mortgagee, his heirs, executors, administrators, and assigns, all the real and personal estate and all other, the trust estate comprised in or now subject to the trusts of the said indentures."

Mrs. Hunt had no future interest in the estate, and her conveyance as mortgagor covered what interest she had—a right to the income—which interest is certainly indicated in the words "as beneficial owner or otherwise." The plaintiff may, therefore, reach the income payable to Mrs. Hunt during her life; but, as appears, indeed, to be conceded, there can be no present disposal of the corpus of the estate to satisfy the debt out of the interests transferred by the mortgagors Lillian Hunt and Reginald Hunt, and by the deceased mortgagor, Frederick Hunt. One of the children of Mrs. Hunt, the defendant Rupert Hunt, did not join in the mortgage, and his contingent interest in remainder as to the whole estate, depending upon the possible death of his brother and sister without issue prior to the death of Mrs. Hunt, requires that the corpus be preserved. What the future interest of the defendants Lillian and Reginald Hunt may be, for the purposes of their ultimate application to the debt, upon the death of Mrs. Hunt, depends upon the effect to be given to the covenant in the mortgage whereby Mrs. Hunt expressed her intention to exercise her

reserved power of appointment of the remainders by will as between her children, so far as to vest the remainders in them equally.

As an actual exercise of the power of appointment, this provision of the mortgage was doubtless ineffective, since a power to appoint by will may not be exercised by deed (2 Perry, Trusts [5th Ed.] § 511 b, and cases cited); but the question remains whether the instrument did not operate as a relinquishment of the power to appoint in unequal shares. In my opinion, it did not. The inquiry is whether the power sought to be released was a general beneficial power or a power in trust. If the former, it could be released; if the latter, the attempted release was inoperative. Chapl. Express Trusts & Powers, §§ 545, 698. As defined by statute (1 Rev. St. [1st Ed.] pt. 2, art. 3; c. 1, tit. 2, § 79):

"A general or special power is beneficial, when no person other than the grantee has, by the terms of its creation, any interest in its execution."

And I am, therefore, brought to the question of the time and nature of the creation of this power. By the terms of the original deed of trust in the year 1872, Mrs. Hunt reserved to herself a general power to dispose of the remainder of the corpus to any person. In the year 1879 the trust agreement of 1872 was quite materially changed, with the sanction and approval of the court, in the course of a certain proceeding taken for the resettlement of the trust. It appears that under the original trust agreement the trustees had power, in their discretion, to make certain advances from the corpus to Mrs. Hunt, and the resettlement of 1879 was to effectuate a condition upon which the trustees had so far exercised this discretion as to advance $50,000 to her; this condition, as recited by the decree having been:

"That she shall upon receiving the same [the sum of $50,000 advanced] exercise the power of appointment to her reserved by said deed, and designate and appoint by deed under seal the person to whom said estate is to be paid over, distributed, and divided at her death."

Agreeably to this arrangement, Mrs. Hunt did exercise her power of appointment; and by the deed made in the year 1879, which was confirmed by the decree, she appointed the remainders to her children, with a certain provision for her husband during his life, reserving to herself a general power of appointment, in the event of the death of all of her children without issue prior to her death, and a power to make appointment among their living children or their issue in unequal shares by will. Was this power of unequal appointment among her children "created" by the original deed of trust in the year 1872, or by the deed upon resettlement of the trust in the year 1879?

As I view the case, the answer must be that the creation of the power took place at the later period, and that persons other than the donee (her children) had an interest in the execution of the power when so created, and by the terms of its creation. True, the general reservation of a power to appoint the remainder to any person, as contained in the original trust deed, was broad enough to include any special power to which that original power might be narrowed through a later alteration of the terms of the trust; but this does not, I think, satisfy the meaning of the word "creation" as used in the statute with

reference to the interest to be affected by the power. If resort is to be had simply to the rule that the greater will include the less when determining the character of what was thus "created," we may as logically take the creation of the original and broader power to have occurred even earlier than the time of the making of the trust itself in the year 1872; for, with the acquirement of the property which she afterward saw fit to convey to trustees, there were "created" in Mrs. Hunt, as an incident to ownership, broader powers of disposal still, which powers she limited to a right of appointment of remainders. To satisfy the reasonable meaning of the statute, the "creation" of this power—the power of unequal appointment, which alone remained to Mrs. Hunt at the date of the mortgage—must be deemed to have taken place when the terms of the resettled trust deed were defined and approved by the judgment of the court permitting the modification of the original trust. The obvious intention was to secure some interest to the children of Mrs. Hunt, which interest was not well defined before, in return for the withdrawal of a part of the principal of the estate by her for her own purposes. The trust agreement was accordingly modified by her surrendering her general power of appointment, with the court's approval, and by the substitution of a special power of unequal appointment among her children, each one of whom had an obvious interest in its execution, so far as the benefit might result to one from an equality of the shares appointed.

This question was not involved upon the demurrer to the complaint, since it affects, not the maintainability of the action against these defendants, but simply the measure of benefit which the plaintiff may take from the judgment to be rendered, as the facts may develop upon the death of Mrs. Hunt. It is a matter which, indeed, has but a prospective effect, depending upon whether the power of appointment is or is not exercised in such wise as to divest the mortgagors, or one of them, of an interest in remainder when the event upon which the remainders take effect, unless divested, occurs; but an adjudication upon the subject is proper to define the interest of the parties before me with respect to the mortgage and the extent of the plaintiff's rights in those remainders.

The character of the power and the right of the donee to release it present questions which are to be determined according to the laws of this state, not the law of the donee's domicile, since they affect something more than the mere personal right of the donee, and relate to the devolution of title to and ownership in real and personal property situated wholly within the state and held under the terms of an express trust, the limitations of which are necessarily to be defined in accordance with our laws.

I hold, therefore, that the mortgage operated to convey the remainder interests of the defendants Lillian and Reginald Hunt, subject to the existing power of Mrs. Hunt to appoint the remainders unequally among her children; hence subject to the divesting of the remainders of the mortgagors in favor of the son who was not a party to the mortgage. Upon the question whether the costs of the English action at law are to be considered a charge within the terms of the mortgage,

I have reached the conclusion that they should be included. By the agreement of the parties, as expressed in the instrument, it was declared:

"That the agreement for the loan hereby secured was made in London, England, and that this claim shall be in all respects interpreted by and effective according to English law."

And this expressed intention is properly to be given effect. Manhattan Life Ins. Co. v. Johnson, 188 N. Y. 108, 80 N. E. 658, 9 L. R. A. (N. S.) 1142. According to the evidence before me as to the condition of the English law, I find the fact to be that costs of the action at law to establish the debt were recoverable under the mortgage in that jurisdiction, and attached to the debt for the purposes of resort to the security. The debt, with costs, thus became the measure of what was secured by the agreement which this court is to enforce.

Notice of the claim having been given to the trustees on January 11, 1900, by a letter which stated the facts and the nature of the demand in such form as to include all the interest of the mortgagors, the judgment should provide for an accounting of income accruing to Mrs. Hunt and coming into the hands of the trustees since that date. It appears from the reply made by the trustees to the notice thus given that the claim was fully understood and as fully repudiated by them upon the merits. Therefore the notice cannot justly be taken as omitting some precise statement of the amount claimed or of the fact that the accruing income was demanded. Further detail in the notice was rendered unnecessary by the form of the refusal to observe it; and, within settled rules, the trustees, if they paid over the moneys thus the subject of the hostile claim, did so at their peril. Heermans v. Ellsworth, 64 N. Y. 159; Stoddard v. Gailor, 90 N. Y. 579; Andrews v. Bleecker, 1 Johns. Cas. 411.

The plaintiff is, therefore, entitled to judgment establishing the lien upon the interests of the mortgagors in the trust estate as prayed, and for an accounting for the net income received by the trustees from January 11, 1900, with provision that the trustees pay to the plaintiff, on the death of Mrs. Hunt, out of the shares of the two defendants Lillian Catherine Hunt and Reginald Sidney Hunt, any balance of the debt that may at that time remain unpaid, so far as there may be shares payable to those defendants at that time. I have noted upon the proposed findings submitted my disposal of the requests to find. Form of decision, containing matters found upon request, may be submitted upon notice of settlement, together with proposed judgment.

Judgment accordingly.