### BACKER et al. v. LEVY et al.
No. 160.

Circuit Court of Appeals, Second Circuit.
Feb. 10, 1936.

Isidor J. Kresel, of New York City (Isidor J. Kresel, Bernard Hershkopf, and William Peyton Marin, all of New York City, of counsel), for appellants.

Max D. Steuer, of New York City, for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

## AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from a decree dismissing the bill of complaint in that it stated no cause of action and that the court was without jurisdiction because of lack of diversity of citizenship. The decree was entered upon a motion by the defendant Levy to dismiss the bill for the foregoing reasons.

The complainants are citizens of the state of South Carolina and infants suing by their guardian ad litem. The individual defendants are all citizens of the state of New York, and each of the corporate defendants is a corporation organized under the laws of that state, having its principal place of business in the Southern District of New York.

The complaint alleges that George Backer died in 1921, leaving a will that was admitted to probate by the Surrogate of New York County wherein, after providing for the payment of debts and disposition of household effects, he left the residue of his estate in trust to pay the income to his widow Sarah Backer for life and provided that: "Upon the decease of my said beloved wife, I give, devise and bequeath the whole of my residuary estate, both real and personal, to my children living at the decease of my wife, and to the issue of any of them who may have died before her, in equal shares, per stirpes and not per capita."

There survived the testator his widow Sarah Backer and five children, among whom was William Backer, the father of the complainants, who died in 1932. He appointed, as the executors and trustees under his will, the defendants, his widow Sarah Backer, his son William Backer, since deceased, and Waldron P. Belknap and Samuel Levy, each of whom qualified on June 14, 1921.

The complaint alleges the following:

The defendant Levy had been for many years the testator's lawyer and business associate and from the inception of the administration of the estate assumed control thereof and managed it almost to the exclusion of the other executors and trustees. The business of the testator was the operation and ownership of large business and hotel buildings and other real estate, and in connection with such operations it was his custom to take title in the name of a corporation controlled by him or organized for that purpose. One of his largest operations was the erection of the Textile Building on Fifth avenue, New York, between Thirtieth and Thirty-First streets. In December, 1919, he contracted to purchase the ground for $2,300,000, and on December 26th caused the defendant Textile Building, Inc., to be organized with a capital of $500 consisting of 100 shares of the par value of $5 each. The entire cash capital of $500 was paid in by him, the capital stock belonged to the testator, and he, his wife, and secretary were the officers and directors. The expense of the building enterprise was approximately $4,800,-000, consisting of the cost of the ground, $2,300,000 and of the building approximately $2,500,000. Upon completion the

property was subject to a first mortgage of $3,500,000, and a second mortgage of $1,200,000, and all funds expended in the construction and financing over and above the amount of the mortgages were supplied by the testator and he was the sole owner of all the stock at the time of his death. After the testator's death, Levy, while acting as one of his executors, without right and in fraud of the rights of the estate and of the beneficiaries, including the complainants, appropriated to himself 20 of the 100 shares of the Textile Building, Inc., caused himself to be elected a director and president of the corporation and exercised complete control of its affairs.

In March, 1928, Levy caused the defendant Textile Properties, Inc., to be organized with a capital of $1,000,000 consisting of 10,000 shares of the par value of $100 each, became a director and treasurer thereof, and continued as such until October 22, 1934. On or about April 24, 1925, and while Levy was president and director of Textile Properties, Inc., Textile Building, Inc., transferred all of its assets (except approximately $60,000 in cash) to Textile Properties, Inc., and the latter company gave its entire capital stock consisting of 10,000 shares of $100 each in exchange for such assets. This stock was to be immediately distributed among the stockholders of Textile · Properties, Inc. Levy, without consideration, in fraud of the Backer estate, and while acting as one of its executors, appropriated to himself 2,000 of the 10,000 shares of Textile Properties, Inc., which in law belonged to the estate.

Thereafter the capitalization of the Textile Properties, Inc., was increased to 100,000 shares of no par value, which resulted in an issue to Levy of 20,000 shares in place of the 2,000 shares which he already held. In November, 1928, the defendant Manhattan Properties, Inc., was organized, to which Textile Properties, Inc., transferred all its assets, except the Textile Building, in exchange for 66,000 shares of stock of Manhattan Properties, Inc., of the par value of $100 each. Levy became treasurer and a director of this company and fraudulently appropriated to himself 13,200 shares of the stock which in law belonged to the estate.

The complaint further alleges that Levy received dividends upon the stock of Textile Properties, Inc., which he had appropriated, amounting to $120,000, and upon the stock of Manhattan Properties, Inc., which he had appropriated, amounting to $16,500, though all the stock and the dividends belonged to the estate. On April 10, 1935, the defendants Sarah Backer and Waldron P. Belknap, as executors, demanded a return of the foregoing property of the estate, but Levy refused to comply with the demand.

The defendants Sarah Backer and Waldron P. Belknap had no part in the acts and misconduct of the defendant Levy and are made parties to the suit in order that complete and appropriate relief may be directed. No judgment is asked against them. The complaint prays that Levy individually and as executor and trustee account for the 20 shares of stock of Textile Building, Inc., 20,000 shares of stock of Textile Properties, Inc., and 13,200 shares of stock of Manhattan Properties, Inc., and dividends amounting to $136,500 with interest thereon, and that he be directed to restore the shares of stock and moneys to the estate, and that the defendant corporations be directed to issue in the name of the executors and trustees new certificates in place of those which stand upon their books in the name of Samuel Levy.

The court below dismissed the suit because complainants, though bringing it in the right of the executors and trustees, had failed to aver a demand upon the executors and trustees to bring suit and a refusal by them to sue, likewise because such executors and trustees were indispensable parties who had to be aligned with the complainants, and as so aligned would prevent the diversity of citizenship between complainants and defendants necessary to give the District Court jurisdiction. If the suit brought is in fact derivative, it cannot be doubted that the result reached by the court below would necessarily follow. The question, therefore, is whether the suit is derivative and whether the executors and trustees, other than Samuel D. Levy, were indispensable parties. If so, the decree must be affirmed.

The appellants argue that they have a remainder interest which is vested, subject to be divested in case they do not survive the testator's widow, and that such an interest amounts to a legal rather than an equitable title. This they say they may protect from waste and dissipation by a trustee through a direct action and that they are not limited to a derivative action

worked out through the trustees. The appellee, on the other hand, insists that, as the property involved in this suit is wholly personal, the entire legal title is in the trustees, none is in the remaindermen, and they alone have the right to recover the assets in question for the benefit of the estate.

■ If, as the appellee states, the trusts under the will were not set up and the title to the assets in question remained in the executors, there can be no doubt that they would hold the unqualified legal title and would be the proper parties to bring any suit against Levy. Brewster v. Gage, 280 U.S. 327, 334, 50 S.Ct. 115, 74 L.Ed. 457; Blood v. Kane, 130 N.Y. 514, 517, 29 N.E. 994, 15 L.R.A. 490. We are willing, however, for the sake of argument, to accept the construction of the pleadings which complainants' counsel urges upon us and to assume that the stocks and dividends said to have been diverted by Levy were a part of the trust estate. But that assumption leaves the appellants in no better situation, for the trustees had legal title to the personal property of the trust and their interest was not, as would have been the case if the trust res had consisted of land, a mere estate pur autre vie. If we should restrict the title of trustees of personal property to that of owners of an estate pur autre vie in land, and should hold those entitled to a future estate vested with a legal remainder, it would be necessary in order to carry out the analogy to real estate to give such trustees express powers of sale and reinvestment, which are ordinarily necessary for convenient administration of trusts. But such rights are implied and inherent. Mertz v. Guaranty Trust Co., 247 N.Y. 137, 144, 159 N.E. 888, 57 A.L.R. 1114. They are of the very essence of the ownership or title to property. Wynehamer v. People, 13 N.Y. 378, 433; Eaton v. Boston, C. & M. R. R., 51 N.H. 504, 511, 12 Am.Rep. 147. For us to hold that title is lacking when we should be required to imply rights equivalent to those of ownership in order to attribute to the trustees their customary powers would seem to be splitting hairs. Without such rights, a trust of personalty with a gift over would be unworkable and would be subject to all the disabilities of a legal life estate and remainder in personal property where there is no trust. Such property ordinarily cannot be sold or reinvested by the persons entitled to possession. Indeed, the difficulty of administering personal property which is subject to life estates and remainder interests is one of the chief reasons for placing such property in trust so that there may be some one to deal with it adequately as owner.

■ It is argued that even if at common law the trustees had complete legal title, section 11 of the New York Personal Property Law (Consol. Laws, c. 41) gives them only an estate pur autre vie. That section reads as follows: *"Suspension of ownership.* The absolute ownership of personal property shall not be suspended by any limitation or condition, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition; or, if such instrument be a last will and testament, for not more than two lives in being at the death of the testator. In other respects limitations of future or contingent interests in personal property, are subject to the rules prescribed in relation to future estates in real property."

We do not regard the foregoing clause as going so far as to prevent a trustee of personal property from having full title merely because there is a gift over upon the death of a life beneficiary. If the testator had transferred specific personal property by bequest to the trustees for the life of his widow with directions to pay her the income during that period and thereafter to deliver that property to her issue who should be living at her death, it might be that there would have been two legal estates in the personal property, one in the trustees pur autre vie and the other after the analogy of real estate in her issue. But where, as in this case, there was an unrestricted transfer of the residuary estate to the trustees with a bequest over upon the death of the equitable life tenant, we do not think the trustees obtained less than legal title. One of the probable reasons for section 11, supra, was to give the owners of successive estates in personal property, in cases where there is no trust, rights analogous to those of persons having similar estates in land rather than to give them mere equitable interests such as they had prior to the statute. To apply the act in such a way as ipso facto to restrict the title of a trustee contravenes ordinary notions of his rights. Professor Simes, one of the advisers of the American Law Institute for the Restatement of Property, says in an article on

"Future Interests in Chattels Personal" in the Yale Law Journal (vol. 39, p. 801), when speaking of section 11 of the New York Personal Property Law: "It is to be noted that this last clause (section 11 Personal Property Law) does not say all rules in relation to future interest in realty are applicable (to personalty). Indeed the New York courts have recognized that they are not always applicable though in many cases the statute has been cited to justify the application to personalty of a rule respecting the land law."

In Forsyth v. Rathbone, 34 Barb. (N.Y.) 388, 408 (decided before the statute), there was a bequest of personal property in trust to pay the income to testator's widow, and on her death a bequest of the corpus to his grandchildren. It was held that until the final division the legal title was in the trustees but that this circumstance did not "render the vested beneficial interests of the grandchildren inalienable." Yates v. Thomas, 35 Misc. 552, 553, 71 N.Y.S. 1113, was decided since the statute. It similarly held that the title to personal property remained in the testamentary trustee until division. Cf. Hanson v. Worthington, 12 Md. 418. We do not see that Baltes v. Union Trust Co., 180 N.Y. 183, 72 N.E. 1005, or Newton v. Hunt, 134 App.Div. 325, 119 N.Y.S. 3, are contra. Cf. Newton v. Jay, 107 App.Div. 457, 468, 95 N.Y.S. 413, and Matter of Thomas' Will, 228 App.Div. 203, 239 N.Y.S. 604, reversed on different grounds in 254 N.Y. 292, 172 N.E. 513. We think the remaindermen here have only an equitable estate. Our conclusion is in accord with section 242 of the Restatement of Property of the American Law Institute (Tentative Draft No. 5), which reads as follows: "When a testamentary instrument creates successive interests in a thing other than land and such instrument is reasonably susceptible of the construction that the executor of such instrument is to become trustee of the thing for the duration of all but the last of such successive interests, to administer it for the benefit of the person or persons entitled to the use thereof, and ultimately to deliver such thing to the person having the last of such successive interests, then a trust is created and the executor is trustee as to interests of all of such persons and the future interests are protected by those procedures which are available to the beneficiaries of trusts."

If the complainants wish to protect their equitable interests, they can only do so in a derivative suit and, as a foundation, must allege and prove a demand upon the trustees to sue, and their refusal to take action. Cherry v. Howell (C.C.A.) 66 F. (2d) 713, 716; Hart v. Goadby, 138 App. Div. 160, 165, 123 N.Y.S. 166; Smith v. Stevenson Brewing Co., 117 App.Div. 690, 694, 102 N.Y.S. 672; Robinson v. Adams, 81 App.Div. 20, 80 N.Y.S. 1098, affirmed 179 N.Y. 558, 71 N.E. 1139; Weetjen v. Bibbard, 5 Hun (N.Y.) 265, 268; Bailie v. Sheldon, 115 Misc. 441, 445, 189 N.Y.S. 749.

This suit is brought by the complainants in the form of a direct, rather than a derivative action. As such, it must fail for lack of proper allegations of demand upon the trustees and their refusal to sue. But if the suit be treated as derivative, Sarah H. Backer and Waldron P. Belknap would be indispensable parties plaintiff and would have to be so aligned. If thus aligned, the court would be ousted of jurisdiction, since they are citizens of the same State as the defendant Levy. Therefore, in any event, a suit in the District Court must fail. But if the complainants have a good cause of action, they will lose no rights because they may apply to the Surrogate of New York County under section 259 of the New York Surrogate's Court Act for a general compulsory accounting by the trustees, or they may bring suit in the State Supreme Court if the trustees refuse, after demand, to take action. We can see no justification for resorting to the federal courts in such a case as this.

Decree affirmed.