(134 App. Div. 325.)

NEWTON v. HUNT et al.

(Supreme Court, Appellate Division, First Department. October 22, 1909.)

1. APPEAL AND ERROR (§ 1099*) — LAW OF THE CASE — DECISION ON APPEAL — SUBSEQUENT APPEALS.

The decision of the Appellate Division sustaining the sufficiency of the complaint on appeal from an interlocutory judgment overruling a demurrer is the law of the case on a subsequent appeal to the Appellate Division, and plaintiff proving the allegations of the complaint is entitled to relief.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4375; Dec. Dig. § 1099.*]

2. TRUSTS (§ 147*)—RIGHTS OF BENEFICIARIES.

Where the right of the children of a settlor of a trust to pay the income to herself for life, and, on her death, to pay the principal to her appointees, and, in default of appointment, to her children, with power to change the disposition of the principal, became fixed and vested absolutely as against the settlor, the children were competent to give an equitable mortgage on their interest, whether such interest was vested absolutely or subject to be divested by some event other than the exercise of the power of appointment.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 192; Dec. Dig. § 147.*]

3. TRUSTS (§ 147*)—BENEFICIAL INTEREST OF SETTLOR.

The beneficial interest of a settlor of a trust reserving to himself the beneficial interest for life is subject to the claims of creditors, though he was solvent at the creation of the trust, and he may give a mortgage on such interest notwithstanding the prohibition against the alienation by a life beneficiary of rents, issues, and profits contained in 1 Rev. St. (2d Ed.) pt. 2, c. 1, tit. 1, art. 2, § 53.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 192; Dec. Dig. § 147.*]

4. TRUSTS (§ 134*)—TITLE OF TRUSTEES—RIGHTS OF BENEFICIARIES.

Where a woman about to marry settled her real and personal estate in trust to pay the income to herself for life, with the right of the trustees to advance a part of the principal, and, on her death, to pay the principal to her children, with reserved power to change the disposition, the trustees took her title and possession of the property to enable them to perform

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the trust, and she could in equity enforce the trust, but the trustees did not take the estate in remainder.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 177; Dec. Dig. § 134.*]

**5. REMAINDERS (§ 14*)—CONVEYANCE BY REMAINDERMAN—CONVEYANCE.**

Estates in remainder subject to be divested are alienable.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. § 10; Dec. Dig. § 14.*]

**6. APPEAL AND ERROR (§ 1097*)—LAW OF THE CASE.**

The decision on appeal of a question not necessarily involved is not res judicata.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368; Dec. Dig. § 1097.*]

**7. TRUSTS (§ 147*) — INTEREST OF BENEFICIARIES—MORTGAGE—RIGHT OF MORTGAGEE.**

Where the settlor of a trust to pay the income to herself for life, and, on her death, to pay the principal to her children with reserved power to change the disposition of the principal, and her adult children mortgaged their interests, the mortgagee acquired a lien on, and was entitled to, the income payable under the trust to the settlor, and acquired a lien on the estate in remainder which the children had at the execution of the mortgage, of which interest they may not be divested by death or by the exercise by the settlor of the right reserved, if any, to change the disposition of the principal.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 192; Dec. Dig. § 147.*]

**8. JUDGMENT (§ 688*)—CONCLUSIVENESS—PARTIES BOUND.**

A judgment in an action by one of three trustees in a deed of trust, whereby the settlor settled her property in trust to pay the income to herself for life, and, on her death, to pay the principal to her children, with reserved power to change the disposition of the principal, brought against the other trustees and the settlor and her husband and children, is binding on all the parties in interest, including issue of the settlor then unborn.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1211; Dec. Dig. § 688.*]

**9. JUDGMENT (§ 720*)—RES JUDICATA—MATTERS CONCLUDED.**

A woman about to marry settled her property in trust to pay the income to herself for life, with power to the trustees to make advances to her of the corpus, and, on her death, to pay the principal to her children, with reserved power to change the disposition of the principal by appointment in her will. A judgment in an action by one trustee against the other trustees and the settlor and her husband and children adjudged that the settlor, by making an indenture directing that, after her death, the trustees should hold the property to pay the income to her husband for life, and, on his death, should transfer the property to her children and the issue of deceased children in equal shares per stirpes, with the reserved right to vary the disposition in certain particulars by will, had exhausted all right to exercise the power of appointment. · *Held*, that such judgment was conclusive that the power of appointment reserved in the original deed of trust no longer existed, though, except for such judgment, it would be doubtful whether the reserved power could be exercised otherwise than by will.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1251; Dec. Dig. § 720.*]

**10. TRUSTS (§§ 140, 153*)—INDENTURE—CONSTRUCTION.**

A settlor of a trust to pay to herself the income for life, and, on her death, to her children, with reserved power to change the disposition of

the principal, executed an instrument which directed that, after her death, the trustees should hold the property and pay the income to her husband for life, and, on his death, the trustees should transfer the property to her children and the issue of deceased children in equal shares per stirpes, and, in case there was no child nor issue of a child living at the settlor's death, she reserved to herself the absolute right of disposing of the property by will, etc. *Held*, that the instrument gave to the settlor a possible interest in reversion in case of the death of all the children during her life without living issue, and each remainderman took a vested interest subject to be divested by his death during the lifetime of the settlor, and any child who predeceased the settlor became divested of any interest in the estate, and the same vested on the death of the settlor in his issue, or, in case he left no issue, in the other children or their issue then living, but they would take under the instrument, and not from such predeceased child.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 183–187, 198; Dec. Dig. §§ 140, 153.*]

11. TRUSTS (§ 280*)—PAYMENT BY TRUSTEES.

A settlor of a trust to pay the income to herself for life, and, on her death, to pay the principal to her children, with reserved power to change the disposition of the principal, and her adult children mortgaged their interests to secure a loan. The mortgagee served notice on the trustees of his claim under the mortgage. Prior to the execution of the mortgage, a judgment had been rendered commanding the trustees to pay the income to the settlor. *Held*, that the trustees were justified in continuing to pay the income to the settlor notwithstanding such notice until the mortgagee obtained an injunction, the appointment of a receiver, or a judgment of a court of competent jurisdiction declaring that the lien of the mortgage attached to the income as it accrued.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 280.*]

Ingraham, J., dissenting.

Appeal from Special Term, New York County.

Action by Frederick William Newton, surviving executor and trustee under the will of Thomas Connock Elliott, deceased, against Anna Benkhard Hunt and others to establish and enforce a lien against the interest of certain defendants in the trust estate held by defendants William Jay and another as trustees. There was a judgment of the Special Term (59 Misc. Rep. 633, 112 N. Y. Supp. 573) for plaintiff, and separate appeals were taken by defendants William Jay and another as trustees, and by Anna Benkhard Hunt and others, and there was a cross-appeal by plaintiff from so much of the judgment as adjudged that the reservation by the defendant Anna Benkhard Hunt in the instrument of November 18, 1879, of the power of unequal appointment among her children was a special power in trust or other than a beneficial or discretionary right; also from so much of said judgment which decreed that the claim of the plaintiff under the mortgage of the defendant Anna Benkhard Hunt and her children who joined in it of July 1, 1898, whereby she undertook to release to her children, the said power of unequal appointment was not effectual to extinguish it; also from all or any part thereof by which it was adjudged that the interests or estates of the children of the defendant Anna Benkhard Hunt in the corpus of the trust estate have been at any time since the execution of the aforesaid instrument of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

the 1st of July, 1898, or now are in any manner subject thereto; also from so much thereof as adjudged that the said interests in remainder of the children of the defendant Anna Benkhard Hunt in the trust estate adjudged to be vested by the mortgage of July 1, 1898, and the assignments thereof in the plaintiff were so vested, subject to any right of unequal appointment among her said children, and therefore subject to the divesting of the same in favor of the defendant Rupert Herbert Hunt; and from any and all parts of said judgment whereby it was decreed or sought to be decreed that the aforesaid power of unequal appointment reserved by the said defendant Anna Benkhard Hunt in the said instrument of November 18, 1879, was not extinguished as aforesaid, or that the lien of the plaintiff on the principal of the trust herein was or was to be in anywise deemed subject thereto. Modified and affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Paul Armitage (S. B. Livingston, on the brief), for plaintiff.

Alton B. Parker (Robert W. Candler, on the brief), for defendants substituted trustees.

J. Frederic Kernochan, for defendants Anna Benkhard Hunt and others.

Edmund L. Baylies (Devereux Milburn, on the brief), for defendant Rupert Herbert Hunt.

LAUGHLIN, J. On the former appeal herein by the substituted trustees from an interlocutory judgment, overruling their demurrer to the complaint on the ground, among others, that it failed to state facts sufficient to constitute a cause of action, this court sustained the complaint. Newton v. Jay et al., 107 App. Div. 457, 95 N. Y. Supp. 413. The material facts bearing upon the sufficiency of the complaint, and which have now been substantially proved as alleged, are stated in our former opinion, and may therefore, so far as pertinent to the questions presented by this appeal, be discussed without being restated. Our decision on the former appeal constitutes the law of this case, so far as this court is concerned, and it follows upon proof of the allegations of the complaint that the plaintiff is entitled to some appropriate equitable relief.

After the former decision on the appeal, answers were interposed by all of the defendants, and the issues were brought to trial. The learned trial justice found every material fact alleged in the complaint, and sustained every claim made thereon by the plaintiff with one exception. The learned counsel for the substituted trustees evidently contended on the trial, as he now does here, that the clause in the mortgage given by the defendant Anna Benkhard Hunt, Frederick Percy Hunt, Lilian Catherine Hunt, and Reginald Sidney Hunt, all of her children, excepting the respondent Rupert Herbert Hunt, who at the time of the execution of the mortgage was an infant and did not join therein, to Thomas Charles Line, made on the 1st day of July, 1898, providing that the said Anna Benkhard Hunt, at the request of and with the concurrence of her adult children, released to them and

to all persons interested in the trust estate as a condition of obtaining the loan from the mortgagee the power of appointment in unequal shares conferred upon her by herself or reserved to her by the indenture of November 18, 1879, to the end and intent that the trust estate should thereupon vest absolutely in her four children named therein, being all of her children, including the infant, share and share alike, subject only to her life interest therein—was not effectual to release and extinguish the power of unequal appointment among her children; that is to say, that it did not divest her of authority to exercise the power of appointment which she reserved or gave to herself by the indenture of November 18, 1879. If the trial justice had sustained the contention made in behalf of the plaintiff on this point, the judgment would have presently attached not only to the income, which, by the trust indenture, was given to the trustees for the use of the settlor of the trust during her life, but to a three-quarters interest in the remainder of the corpus of the estate as well, provided the remainder vested absolute in the children as was assumed by the parties to the mortgage, and was asserted by both appellants and respondents, and assumed by this court without examination on the former appeal. If the right of the children to share equally in the remainder had become fixed and vested absolute or absolute as to the settlor of the trust, even though they only took a contingent estate in remainder, and was no longer subject to be changed by an exercise of the power of appointment, the three of the four remaindermen who had attained their majority were perfectly competent to assign or to give an equitable mortgage on their vested interests, and such we consider it to be, whether such interests were vested absolute or subject to be divested by some event other than the exercise of the power of appointment, for their interests were alienable as will be shown presently.

The notice of appeal of the plaintiff is, as has been stated in the statement of facts, from many parts of the judgment, which, however, depend upon the decision of the single question as to whether the settlor has as against the owner of the indebtedness and the holder of the mortgage extinguished all right to further exercise any power of appointment with respect to directing by will or otherwise, that her children shall take the remainder in unequal shares, or that one or more shall take to the exclusion of others or another. The learned counsel for the appellants other than the plaintiff requests the court to reconsider the decision made on the former appeal, principally upon the ground that the court overlooked or failed to follow the decision of the Court of Appeals in Noyes v. Blakeman et al., 6 N. Y. 567. On the former appeal herein, that case was cited in the points and examined by the court, but it was not deemed necessary to consider it in the opinion, for it was deemed inapplicable, in view of the later decision in Schenck v. Barnes, 156 N. Y. 316, 50 N. E. 967, 41 L. R. A. 395, which expressly decided that, where the settlor of the trust reserves to himself the beneficial interest for his life, such beneficial interest is subject to the claims of creditors, even though he were solvent at the time he created the trust. It necessarily follows from that decision that the prohibition against the alienation by a life beneficiary of

rents, issues, and profits contained in section 63, art. 2, tit. 2, c. 1, pt. 2, Rev. St. (2d Ed.), does not apply where the life beneficiary is the settlor of the trust; and it necessarily follows that it was competent for the settlor of the trust to assign her interest in the income as she did in the case at bar by giving a mortgage thereon. Nothing in the case of Noyes v. Blakeman, supra, was, we think, intended to decide that the estate of the remaindermen was by virtue of section 60, art. 2, tit. 2, c. 1, pt. 2, Rev. St. (2d. Ed.), vested in the trustees, so that their interests were inalienable. That point was not then presented for decision. The trustees took the interest and title of the beneficiary and the possession of the fund or property to enable them to perform the trust; but the beneficiary has a right to have the trust performed and has a standing in equity to enforce it (Van Cott v. Prentice et al., 104 N. Y. 45, 53, 10 N. E. 257), and the trustees did not take the estates in remainder (Baltes v. Union Trust Company, 130 N. Y. 183, 72 N. E. 1005; Stevenson v. Lesley et al., 70 N. Y. 512; Embury v. Sheldon et al., 68 N. Y. 227, 234; Losey v. Stanley, 147 N. Y. 560, 568, 42 N. E. 8). The rule on this subject is the same, both with respect to personal property and with respect to real property. Hutton et al. v. Benkard et al., 92 N. Y. 295, 304; Cook v. Lowry, 95 N. Y. 103, 111. Estates in remainder, even if subject to be divested, are alienable. Stringer v. Young, 191 N. Y. 157, 83 N. E. 690; Ham v. Van Orden, 84 N. Y. 257, 268; Matter of Tienken, 131 N. Y. 391, 401, 30 N. E. 109. See, also, Baltes v. Union Trust Co., 180 N. Y. 183, 72 N. E. 1005, and Hotchkiss v. Elting, 36 Barb. 38–46. It follows, therefore, that it was competent both for the beneficiary and for the remaindermen to give an equitable mortgage on their respective interests in the income and in the corpus of the estate as they did.

It was stated in the opinion on the former appeal, in effect, that the settlor of the trust by her agreement with the parties in interest, as already stated herein, and by executing the mortgage, extinguished any right she had to make a further appointment with respect to the division of the remainder between her children. The decision of that question was not necessarily involved, and is therefore not res adjudicata. The four justices who are voting for a modification of the decree in accordance with the views expressed in this opinion are equally divided in their views on that question, and for that reason, as well as for another to be stated presently, no opinion is expressed thereon now. In the circumstances we deem it proper to defer a decision of the question as to whether the settlor of the trust may, by will or otherwise, give any further effectual direction with respect to the shares in remainder which her children shall take until her death, and to confine our decision to an adjudication that the plaintiff, by virtue of the mortgage, has a lien upon and is entitled to the income payable under the trust indenture to the life beneficiary, and to the interest and estate in remainder which the children who joined in the mortgage had at the time of the execution of the mortgage of which they shall not have been divested by death or by the exercise by their mother of the right, if any, reserved to her to direct by last will and testament that her children shall take in unequal shares, if she has not released

and relinquished such right, and the reversionary interest, if any, in the settlor of the trust.

It appears by the judgment roll in an action in the Supreme Court in the county of New York, brought by one of the original trustees in July, 1879, against the other two, the settlor of the trust and her husband and her children, for leave to resign and for the substitution of William Jay and Alonzo C. Monson (respondent Rupert Herbert Hunt was not a party, for he was not born until after the termination of the litigation); that with the consent of the settlor two of the original trustees resigned in 1879, after accounting in that action, and the third then, pursuant to authority conferred upon him by the original trust agreement, named Alonzo C. Monson and William Jay as substituted trustees on the nomination of the settlor of the trust, and then the plaintiff in that action resigned as trustee with the consent of the settlor; that, before these resignations, the trustees had decided to exercise the power conferred upon them and advanced to the settlor the sum of $50,000 out of the corpus of the trust fund on condition that she should exercise the power of appointment reserved to her in the original trust indenture, which was a general power of appointment to be exercised by her by a last will and testament or an instrument in the nature thereof, and, in default of such exercise, it was provided that the remainder should pass under the laws of the state of New York with respect to intestate property; that she had exercised this power of appointment by the indenture of November 18, 1879, to which reference is made and which is more fully described in the opinion of this court on the former appeal, and that the court in and by the judgment in that action entered November 26, 1879, accepted the resignations of the trustees and the appointment of the substituted trustees, and conferred the same authority upon the substituted trustees as on the original, except as to advancing part of the capital to the settlor and naming successors, and fixing a new basis for the compensation of the trustee pursuant to the settlor's agreement with them, and it was further therein adjudged that the settlor had by making the indenture of November 18, 1879, exhausted all right to exercise the power of appointment, and the court ratified and confirmed the disposition of the estate which she had thus made, and adjudged that her action in exercising the power of appointment by said indenture of November 18th was final and exhausted that power, and the $50,000, being the consideration for her exercise of the power of appointment, was ordered paid to her out of the principal. That judgment was, of course, binding upon all the parties, and was binding upon the issue of the settlor then unborn, as well as upon issue in being, for their interests were the same as those presumptively entitled to take, and they were necessarily represented by them. Tonnele v. Wetmore, 124 App. Div. 686, 109 N. Y. Supp. 349, reversed 88 N. E. 1068. See, also, Downey v. Seib, 185 N. Y. 427, 78 N. E. 66, 8 L. R. A. (N. S.) 49, 113 Am. St. Rep. 926. It seems to me that the effect of that decree necessarily is that there remains no further authority in the settlor of the trust to exercise the original power of appointment. It would seem, therefore, in view of this decree, that there can no longer be any question with respect to the validity of this trust and the plain-

tiff has elected to proceed upon the theory that it was valid. Had it not been for the judgment of the Supreme Court to which reference has been made, there would be a serious question as to whether the settlor could exercise the power of appointment reserved in the original indenture otherwise than by will, but the judgment forecloses that question.

The decree of the Supreme Court to which reference has been made confirms the trust indenture of November 18, 1879, which, in effect, reserves to the settlor authority to revoke by last will and testament the appointment as made in whole or in part as to one or more of the children, and to direct that another or others shall take the estate thus cut off, which might result in the children taking in unequal shares. Whether it was competent for the settlor of the trust as a condition of obtaining the loan to secure which the mortgage was given to effectually release and relinquish this reserved right to give a further valid direction by her last will and testament with respect to the shares which the children should take as between themselves is the one which we do not now decide, for the reason that it may never arise, as she may not attempt to exercise the reserved authority and the indebtedness may all be paid out of income, and, in no event, can it be determined until the death of the settlor of the trust the precise interest in remainder, if any, which will be subject to the lien of the mortgage. It appears by the trust indenture of November 18, 1879, that there is a possible interest in reversion in the settlor of the trust; for if all of the children should die during the life of their mother, without leaving lawful issue, the remainder was undisposed of, and it would revert to her estate in the absence of a will otherwise disposing of it. Baltes v. Union Trust Company, 180 N. Y. 183, 72 N. E. 1005; Hotchkiss v. Elting, 36 Barb. 38, 46. We are of opinion, also, that although each remainderman took a vested interest in the remainder by virtue of the trust indenture of November 18, 1879, such vested interest was subject to be divested by his death during the lifetime of his mother. The same was doubtless true with respect to his father, but the father has since died, which eliminates that question. The provisions of the indenture of November 18, 1879, upon which this question depends, follow the provisions authorizing the trustees to hold the corpus of the estate during the life of the husband of the settlor, should he survive, and to pay over to him the surplus rents, issues, and profits, and, so far as material, they are as follows:

"And upon his death shall assign, transfer, convey, and set over all and singular the said estate real as well as personal unto such children of the party of the first part as shall then be living and to the issue of such of them as shall have died in equal shares per stirpes and not per capita absolutely and forever. And this indenture further witnesseth that the party of the first part hereby reserves to herself the right to vary the disposition hereinbefore made of the said trust estate by her last will and testament or by an instrument in the nature thereof hereafter to be executed by her by directing that a certain part of such annual income shall be paid to her children during the lifetime of her said husband if she shall so desire, and also by directing and appointing that the said estate upon her said husband's death shall be assigned, transferred, conveyed and set over unto one or more of her children or to their issue to the exclusion of other of her children and their issue or that such estate be assigned, transferred, conveyed and set over unto said

children and to their issue in such unequal shares as she may desire and as she may hereafter determine.

"And, in the event of there being no child or children of hers nor issue of a child or children living at the time of the death of the party of the first part, then she reserves to herself the absolute right of disposing of the said trust estate by her last will and testament or instrument in the nature thereof, to any person or persons whomsoever, as she may desire, and she also reserves to herself the right to dispose by last will and testament or by instrument in the nature thereof, all and singular the said trust estate in the event of all her children departing this life without issue during the lifetime of her said husband, anything herein contained to the contrary in any wise notwithstanding."

It seems quite clear, in view of these provisions, that any child who predeceases his mother would become divested of any interest in the estate, and that the same would vest on the death of his mother in his issue, and, in the event of his leaving no issue then living, in the other children or their issue then living (Matter of Hogarty, 62 App. Div. 79, 70 N. Y. Supp. 839); but they would take under the indenture, and not from him. The construction of the indenture in this regard was not presented for adjudication on the former appeal, and the court did not decide the question. The observation in the opinion on the former appeal, that, "upon the execution of the deed of appointment and the relinquishment of the right to further exercise the power of appointment, the interests of the children, which were theretofore contingent, became vested subject only to the life estate of their mother, the legal title, however, being in the trustees" (107 App. Div. 457, 468, 95 N. Y. Supp. 413), was made with reference to the extinguishment of the right of the settlor to further exercise the power of appointment. The question as to whether the remainder vested absolute in the children or was subject to be divested was not only not necessarily involved in a decision of the appeal, but the court was not asked by either party to pass upon the question, and both counsel in their points assumed and expressly claimed that the remainder vested absolute in the children so far as the question now under consideration is concerned —they litigated the question as to the right of the settlor to exercise the authority reserved—and that theory of the construction of the indenture is still asserted by the plaintiff, and not questioned by the defendants. On this point counsel for the defendant trustees, who were the appellants on the former appeal, stated in his points as follows:

"The rights of the children of Mrs. Hunt under the terms of the marriage settlement, as resettled, became vested, and cannot be taken from them except by their consent. It must be borne in mind that the claim in this action is against Mrs. Hunt and all her children. Two of her children, Lilian Catherine Hunt and Reginald Sidney Hunt, were parties to the mortgage, but her other son, Rupert H. Hunt, was not a party to the mortgage, and the plaintiff has no claim against him, except that the plaintiff is endeavoring in this action to take from him some of his vested rights. Under the deed of trust as resettled, the corpus of the estate vested absolutely in the children, subject to Mrs. Hunt's life estate and that of her husband, but she expressly reserved to herself the right to dispose by will of the corpus in such shares as she might see fit, and so she can now give to Rupert H. Hunt the entire corpus of this estate."

Counsel for the plaintiff, who was the respondent, stated in his points as follows:

"But, in addition to the interest of Mrs. Hunt, we have also an assignment of the interests of two of her children in the trust estate. That these expectant interests in remainder are assignable needs no argument. They are vested remainders; the possession only being postponed. * * * The power of appointment does not interfere with the vesting."

It will thus be seen that the question as to whether the estates of the remaindermen were vested absolute or subject to be divested by their death during the life of their mother was not presented for decision on the former appeal, but would be necessarily involved if the court should now undertake to decide the precise interest in remainder that will be subject, on the death of the settlor of the trust, to the payment of this indebtedness; and, since the interests of the mortgagor-remaindermen are subject to be divested by their death during the lifetime of their mother, it cannot now be known whether any share or interest in the remainder will be applicable to the payment of the indebtedness, and, since we are not in accord on the question as to whether the settlor may, by her last will and testament or otherwise, affect the interest in remainder which any child will take, we have reached the conclusion that we should merely declare the mortgage a lien upon the interest of the mortgagors in the estate at the time of the execution of the mortgage of which they shall not become divested by their death during the lifetime of their mother, or by the exercise of the authority or power reserved to the settlor by the trust indenture of November 18, 1879, and not cut off or relinquished by the agreement and mortgage to which reference has been made.

The effect of the foreign adjudication was, we think, properly decided by the learned trial justice, and needs no further consideration here. We agree with the learned trial justice that the income can be reached as it accrues from time to time in the hands of the substituted trustees. The contingent estates in the remainder of the other mortgagors might perhaps be presently reached by directing a sale thereof; but that relief does not appear to have been asked, and no objection is made to deferring relief against the remainder until the expiration of the trust.

We think, however, that the court erred in adjudging that the substituted trustees are accountable to the plaintiff for all income received after notice of the claim made by plaintiff under the mortgage. The plaintiff took no further step toward asserting or enforcing his claim after giving this notice until he commenced this action some four years thereafter. In view of the fact that the Supreme Court in resettling the trust commanded the trustees to pay the income to Mrs. Hunt, I think they were justified in continuing to pay it after such notice until the plaintiff obtained an injunction, the appointment of a receiver, or a judgment of a court of competent jurisdiction, declaring that the lien of the mortgage attached to the income as it accrues. The judgment, therefore, should also be modified by requiring the trustees to account only from the date of the decision of the trial court herein.

The judgment should be modified as herein indicated and by inserting appropriate provisions showing that it is not to be deemed an adjudication on the question as to whether or not it is competent for the settlor of the trust to direct by last will and testament that the remain-

dermen who joined in the mortgage shall take less than their interests as recited in the mortgage—the modifications to be made in the judgment to carry our decision into effect will be determined on the settlement of the judgment to be entered hereon—and, as thus modified, affirmed without costs to any party.

PATTERSON, P. J., and CLARKE and SCOTT, JJ., concur.

INGRAHAM, J. (dissenting). There are several interesting questions presented by this appeal, and I wish, first, to state my conclusion without considering how far the court is concluded by the former decision on the appeal from the judgment overruling the demurrer to the complaint. 107 App. Div. 457, 95 N. Y. Supp. 413. By the original deed of trust, dated the 31st day of July, 1872, it is quite clear that a valid trust was created. By that instrument the defendant Anna B. Hunt, then Anna Benkhard, granted, bargained, assigned, transferred, and set over unto the parties of the second part the property described which consisted of real and personal property, "to have and to hold the above-described premises with the appurtenances, unto the parties of the second part, and their successors and assigns upon the trusts nevertheless and to and for the uses and purposes following, that is to say." The trustees were to sell and dispose of the real and personal property at such time and upon such terms as the trustees should deem proper, to invest and keep invested from time to time the net profits thereof, collect and receive the interests, incomes, rents, issues, and profits therefrom, and pay and apply the net interest, income, rents, issues, and profits to the use of Anna Benkhard, the creator of the trust, for and during her natural life, and, after her death, to pay and divide the real and personal estate or the proceeds thereof among such person or persons or body corporate and in such relative shares, estates, or proportions as the said party of the first part should, by her last will and testament or instrument in writing in the nature of a last will and testament, designate and appoint, and, in default of any lawful designation or appointment, then to pay and divide the said real and personal estate or the proceeds thereof among such person or persons as under the laws of the state of New York should then be the heirs at law of the party of the first part. This created an express trust under section 55 of the Statute of Uses and Trusts. 1 Rev. St. (2d Ed.) p. 723, pt. 2, c. 1, tit. 2. Under section 60 of that statute every express trust, valid as such in its creation, except as therein otherwise provided, "shall vest the whole estate in the trustees, in law and in equity, subject only to the execution of the trust. The person for whose benefit the trust is created, shall take no estate or interest in the lands, but may enforce the performance of the trust in equity." Section 63 provides that:

"No person beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of such interest."

The trustees became vested with title to the property transferred, and the interest in the trust property of those for whose benefit the trust was created was the right to enforce the performance of the trust in equity. At the time of the creation of this trust Anna Benk-

hard, the grantor, was unmarried, and, in default of the exercise by her of the power of appointment, her heirs at law at the time of her death would become absolutely entitled to the remainder. The reservation of the power of appointment did not at all affect the trust, or vest in the grantor a beneficial interest in the remainder. Her interest as a beneficiary under the trust was entirely distinct from the right that she reserved to exercise this power. She parted with all title to the property, which vested in the trustees. She had a right to enforce the performance of the trust in equity. She also reserved to herself a power of appointment of the remainder by a last will and testament, the two being entirely distinct; the right to appoint being one which could only become effective after her death, and would necessarily depend upon her leaving a last will and testament by which only could the power be exercised. Upon the failure to exercise such power, the estate would vest absolutely in those who would be her heirs at law at the time of her death, so that the remainder would necessarily be contingent. Thus, if the grantor of the power should have children who should die before her, those children would never have any interest in the property, as they could never become the heirs at law of the grantor. The provisions of this original trust instrument, however, were seriously modified by the agreement of the 18th of November, 1879, and the judgment of the Supreme Court entered on the 26th of November, 1879, ratifying and confirming that agreement. On the 17th of November, 1879, an indenture was executed between Charles G. Landon, a trustee under the deed of trust of July 31, 1872, which recited the instrument creating the trust, the resignation of two of the trustees; that the party of the first part was the remaining trustee and contemplated resigning his trusteeship, and for that purpose had commenced an action in the Supreme Court to have the accounts passed and that he be discharged from said trust; that Anna B. Hunt had consented that the resignation of all three trustees should be accepted, and requested that Alonzo C. Monson and William Jay, the parties of the second part, should be appointed as the successors of the said trustees. The indenture witnesses that the party of the first part, the remaining trustee nominated, constituted and appointed the said Monson and Jay, parties of the second part, to be trustees under the deed of trust of the 31st of July, 1872, and that for the purpose of vesting said Monson and Jay with all the said estate, real and personal, the said party of the first part did grant, bargain, alien, release, transfer, and set over to Monson and Jay, their successors and assigns, all the trust estate, real and·personal, then held under the provisions and trusts of said indenture, subject to the trust contained in and created by the said indenture or deed of trust. It was further recited that on the 18th day of November, 1879, an indenture had been executed between Anna B. Hunt, the original creator of the trust, and Monson and Jay, which recited the trust deed of the 31st of July, 1872, the resignation of the three trustees provided for in said trust deed, and the appointment of Monson and Jay as trustees under the said trust deed; that the original trustees had exercised the discretion in them vested in and by the said trust deed by advancing to the said Anna B. Hunt the sum of $50,000 out of the principal of the estate on condition that she should

upon receiving the same exercise the power of appointment by her reserved in the said trust deed, and designate and appoint by deed under seal the persons to whom said estate is to be paid over, distributed, and divided at her death; that the said Anna B. Hunt had determined so to exercise her said power of appointment to her reserved and to dispose of the estate held in trust as thereinafter set forth. The indenture then witnessed that in consideration of the premises, and the sum of $50,000, paid to her by the said trustees, the said Anna B. Hunt did by virtue of the power to her reserved in and by the said deed of trust designate and appoint that the estate remaining in the hands of the trustees at the death of the said Anna B. Hunt should be paid over, divided, and disposed of by paying the rents, incomes, and profits thereof to her husband during his life, and, upon his death to assign, transfer, convey, and set over the said trust estate unto such of her children as should then be living and to the issue of such of them as should have died in equal shares per stirpes, and not per capita absolutely and forever. The said Anna B. Hunt, however, reserved to herself the right to vary the disposition made of the said trust estate by her last will and testament, or by an instrument in the nature thereof thereafter to be executed by her by directing that a certain part of such annual income should be paid to her children during the lifetime of her said husband if she should so desire, and also by directing and appointing that the said estate upon her husband's death should be assigned, transferred, conveyed, and set over unto one or more of her children or to their issue to the exclusion of other of her children and their issue, or that such estate be assigned, transferred, conveyed, and set over unto said children and to their issues in such unequal shares as she might desire and as she might thereafter determine; that, in the event of there being no child or children of hers, nor issue of a child or children at the time of the death of the said Anna B. Hunt, then she reserved to herself the absolute right of disposing of the said estate by her last will and testament or an instrument in the nature thereof to any person or persons whomsoever she might desire.

Subsequent to the execution of these two instruments, judgment was entered in the action commenced by the remaining trustee and to which the said Anna B. Hunt, her husband and all of her children, except the defendant Rupert Herbert Hunt, who was then unborn, were parties. That judgment recited the conveyance by the plaintiff to the substituted trustees, the indenture by which the defendant Anna B. Hunt had received the sum of $50,000 on condition that she should exercise the power to her reserved of appointing by her last will and testament or otherwise the manner in which the remainder of the said trust estate should be vested and divided at her death; that the said Anna B. Hunt, in consideration of such payment, had so exercised the power, and had, by an instrument duly executed under her hand and seal, duly appointed the manner in which said trust estate should be vested and distributed at her death. It was ordered, adjudged, decreed, and declared that the power of the defendant Anna B. Hunt reserved by the said trust deed of appointing and directing the manner in which said trust estate should be paid over and divided at her death had been duly and effectually exercised and exhausted by her execution of a

certain indenture of deed under her hand and seal dated the 18th day of November, 1879, whereby she appointed and directed, in substance, that the two trustees or their successors should hold the said trust estate during the lifetime of her husband, the defendant Percy Hunt, if he should survive her, and should pay the income thereof, or such part of said income as she might by her last will direct to be paid to him, and upon his death, or her death as the case might be, that they should divide the principal of said estate equally among her children, and the issue of such of them as should have died before that time per stirpes, or to pay over and divide the principal of said estate equally among her children, and the issue of such of them as should have died before that time per stirpes, or to pay over and divide the principal of said estate to and among her children and their issue in such shares and proportions as she might by her will direct, all of which by reference to said original deed or to the record thereof, when the same should have been recorded, should more fully and at large appear; and it was further ordered, adjudged, and decreed that the said appointment and disposition of the said estate so made as aforesaid was ratified and confirmed, and it was thereby declared that the power to appoint and dispose of the said estate had been exercised and exhausted, and that such appointment and disposition were effectual, final, and irrevocable.

The effect of this instrument ratified and confirmed by the judgment was to limit the power of appointment reserved by Anna B. Hunt so that it thereafter could only be exercised according to the terms of the instrument judicially declared to be effectual and irrevocable. It bound all the parties to that action, including Anna B. Hunt, in whom the power to dispose of the remainder of the property had theretofore existed. It still reserved, however, to Anna B. Hunt the right by a last will and testament, or instrument in the nature of a last will and testament, to distribute the remainder among her children as she wished, either in unequal proportions or by excluding one or more of her children, and appointing one or more of them to receive the entire trust estate upon her death. It was adjudicated that a valid trust existed, that the legal title of the corpus of the trust was in the trustees, and that the right of the beneficiaries was restricted to an enforcement of the trust in equity. The trust existing, the trustees holding the title to and possession of the property in July, 1898, the indenture upon which this action is based was executed. The defendant Anna B. Hunt and her children were therein described as residents of Paris, France. She and her children who were of age united in what was called a mortgage to secure the sum of £9,200. This instrument recited the trust indenture of July, 1872, and also the indenture of the 18th of November, 1879. It also recited that the said Anna B. Hunt had reserved a power to vary such disposition by her will by appointing such trust estate to her children in unequal shares, or to one or more children or their issue to the exclusion of the others. It then provided that the mortgagors jointly and severally covenanted to pay to the mortgagee the sum of £9,200 with interest thereon; that the mortgagors as to the share which she or he was or should become entitled to under the said indenture of the 31st of July, 1872, and the 18th day of November, 1879, or in any other manner whatsoever, and as beneficial

owner, did grant, appoint, bargain, sell, assign, transfer, and set over unto the mortgagee all the real and personal estate and all other the trust estate comprised in or then subject to the trusts of the said indenture of the 31st of July, 1872, and the 18th day of November, 1879, or either of them, to hold unto and to the use of the mortgagee, subject to the proviso for redemption thereinafter contained. It was further provided that the said Anna B. Hunt, at the request and with the concurrence of the said Frederick Percy Hunt, Lilian Catherine Hunt, and Reginald Sidney Hunt, released unto the said Frederick Percy Hunt, Lilian Catherine Hunt, and Reginald Sidney and all other persons interested in the said trust estate the power of appointment in unequal shares or to one or more child or children to the exclusion of the others, to the end and intent that the said trust estate shall vest absolutely, subject to the life interest of the said Anna B. Hunt, in the said Frederick Percy Hunt, Lilian Catherine Hunt, Reginald Sidney Hunt, and Rupert Herbert Hunt in equal shares, and the said Frederick Percy Hunt, Lilian Catherine Hunt, and Reginald Sidney Hunt mutually covenanted and agreed to divide equally, notwithstanding any such appointment or attempted appointment, every and all parts and interests in such trust estate to which they may respectively be or become entitled, with a covenant of further assurance. By this instrument a lien was created upon the interest of the mortgagors in all the real and personal estate, and all other the trust estate comprised in or then subject to the trust. There was no assignment or attempted assignment of the income which was payable to Anna B. Hunt for her life. What was transferred to secure the payment of this loan was the real and personal estate which constituted the trust. Anna B. Hunt attempted to release unto her three children who joined with her in the execution of the mortgage the power of appointment in unequal shares to one or more child or children to the exclusion of the others, and her three children then mutually covenanted and agreed to divide the trust estate equally, notwithstanding any such appointment or attempted appointment. So that upon the termination of the trust the entire trust estate would vest in Anna B. Hunt's four children, and the three children who executed the mortgage conveyed their interest in the trust property to secure the payment of the amount secured.

I can find nothing in this instrument which, either directly or by necessary implication, assigned or attempted to assign the future income from the trust property to accrue to Anna B. Hunt during her life. The whole transfer relates to the real and personal estate and all other of the trust estate comprised in and subject to the trust to continue during Anna B. Hunt's life. It is the trust estate that is subject to the trust that is assigned and transferred to the mortgagee, and full effect can be given to every covenant and agreement in this instrument by construing it as transferring the interest of those executing it in the remainder, and excluding from the effect of the mortgage, which it nowhere attempts to assign or transfer, the income upon the trust property during the continuance of the trust. After default had been made in the payment of the amount loaned, the plaintiff commenced an action at law in the courts of England to recover the amount

of the loan. The mortgagors appeared in that action, interposed an answer, and there resulted a money judgment in favor of the plaintiff for the amount due with interest. That judgment is set forth in the complaint and was proved upon the trial, and, as I understand it, the learned trial judge held that it was a binding adjudication, both upon those parties to it and the trustees who were not parties to that action as to the effect of this mortgage. Upon default in the payment of the amount of this loan to secure which this mortgage was given, undoubtedly the mortgagee had an action to foreclose the mortgage, in which case, under a proper judgment, the interest of the mortgagors in the property mortgaged could have been sold and the proceeds applied to the payment of the indebtedness; but to such an action the trustees would be neither necessary nor proper parties, or the mortgagee as a creditor of the mortgagors could, upon having exhausted his remedy at law, have commenced a creditor's action to have applied to the payment of his debt the equitable rights and interest of the mortgagors. But the plaintiff has not commenced either of these actions. He has apparently seen fit to treat this mortgage as an absolute transfer to him of the interest of all of the mortgagors in this trust, and commenced this action to recover from the trustees so much of the trust property as will discharge the amount of his demands.

In a creditor's action it is undoubtedly the rule that judgment against the debtor is conclusive evidence to establish the existence and amount of the loan from the debtor to the creditor. The cases upon this question are reviewed in Nicholas v. Lord, 121 App. Div. 924, 106 N. Y. Supp. 1139, affirmed by the Court of Appeals in 193 N. Y. 388, 85 N. E. 1083; but what was established by the English judgment, and all that was established by it, was the existence and amount of the debt of the mortgagors to the mortgagee. In Nicholas v. Lord the debtor transferred certain property to trustees in trust to pay any just debts which the grantor then owed. The action was brought against the trustees to recover a debt which the debtor then owed and which has been established in an action in this state by a judgment in favor of the plaintiff against the transferrer of the property; and it was held that the recovery of that judgment was conclusive evidence as to the existence of the debt and its amount as against the trustee. Undoubtedly, in an action to foreclose this mortgage, the English judgment would be conclusive evidence that the mortgagors were indebted to the plaintiff, and as to the amount of the indebtedness and in a judgment creditor's action to reach the equitable assets of a judgment debtor the English judgment would be conclusive evidence to the same extent. It seems to me, however, that this action cannot be sustained as a creditor's action. It is not alleged in the complaint, nor is it claimed, that the plaintiff has exhausted his remedy at law against the defendants. No judgment has been recovered in this state against the defendants, and no judgment has been recovered in France, where the debtors reside. A judgment creditor's action cannot be founded upon the English judgment, for the debtor did not reside there, and assumably had no property there; and in no case has it been held that a judgment recovered against a debtor in a foreign country in which the debtor was not domiciled can be the basis of a creditor's action in an-

other jurisdiction from that in which the judgment was recovered. This court has held that a creditor's action to reach a trust fund in this jurisdiction could only be maintained where a judgment had been obtained in this jurisdiction against the debtor and execution thereon returned unsatisfied. Dittmar v. Gould, 60 App. Div. 94, 69 N. Y. Supp. 708. See, also, Ward v. Boyce, 152 N. Y. 191, 46 N. E. 180, 36 L. R. A. 549; Capital City Bank v. Parker, 134 N. Y. 527, 31 N. E. 976, 18 L. R. A. 240. Schenck v. Barnes, 25 App. Div. 153, 49 N. Y. Supp. 222, affirmed in 156 N. Y. 316, 50 N. E. 967, 41 L. R. A. 395, was an action brought by a judgment creditor to reach property conveyed by the judgment debtor to a trustee upon trust, to collect the rents and profits thereof, and to apply them to the use of the grantor during his life, with remainder over. The action was based upon a judgment against the defendant, judgment debtor, recovered in this state, the issue of an execution thereon and its return unsatisfied, and the judgment asked for was that the court determine the amount of interest which the defendant Barnes reserved to himself in and to the said trust fund; that the right to such interest be sold, and the proceeds be applied to the satisfaction of the plaintiff's judgment. There was a demurrer to the complaint which has been sustained at the Special Term, but which the Appellate Division overruled, and the judgment of the Appellate Division was sustained by the Court of Appeals. In the opinion of Judge Cullen in the Appellate Division the principle upon which the action was sustainable was discussed, and it was there treated solely as a judgment creditor's action based upon the judgment in this state; the court stating that "there is therefore but one question presented, and that a narrow one, i. e., whether such an interest reserved for his own benefit by the founder of a trust is subject to the claims of his creditors," but both in the Appellate Division and the Court of Appeals it was expressly stated that the court did not determine in what manner the debtor's life interest could be appropriated to the plaintiff's claim; and it is not necessary to determine it in this action, as the absence of a judgment against the debtor and the return of an execution unsatisfied prevents the action from being treated as a judgment creditor's action. Nor do I think the judgment in its present form could be sustained as a judgment in an action to foreclose a mortgage. As before pointed out, I can find no provision in the indenture of mortgage which actually imposes a lien upon the accruing income. All that is actually mortgaged is the corpus of the trust property, and the legal effect, it seems to me, of this instrument, is to create a lien upon the corpus of the trust estate subject to the trust. I assume that the mortgagee would have a right to maintain an action for the foreclosure of that mortgage, and, upon a judgment of foreclosure, the court would be justified in selling the interest of the mortgagor in the mortgaged property and applying the proceeds to the payment of the plaintiff's indebtedness; but the plaintiff did not demand such a judgment, and no such judgment has been granted. The court, by its judgment, determined that the plaintiff, by virtue of the mortgage instrument of July, 1898, and the assignments thereof, has a lien upon the beneficial life interest of the defendant Anna Benkhard Hunt, and upon the vested remainders of

the two defendants Lilian Catherine Hunt and Reginald Sidney Hunt, which equity will enforce; that the lien upon the beneficial life interest of the defendant Anna B. Hunt became and is effective as against the trustees from January 11, 1900, and the judgment then directed the trustees to pay over to the plaintiff any sum or sums that may have come into their hands as rents, issues, profits, and income from the trust estate from January 11, 1900, sufficient to satisfy and pay the plaintiff's debt of $57,363.55, and the trustees are directed on the death of Anna B. Hunt to pay over to the plaintiff equally out of any shares that might be coming to the two defendants Lilian Catherine Hunt and Reginald Sidney Hunt, or out of the share that might be coming to either of them in case the other may have died prior to the death of Anna B. Hunt any balance that might be due at that time remaining unpaid to the plaintiff on said mortgage debt.

In my view this judgment is erroneous so far as it applies the income accruing to the defendant Anna B. Hunt, for the reasons before stated, that her income is not charged with a lien in favor of the plaintiff. It is also erroneous in directing the trustees to pay out of the principal of the trust upon the death of Anna B. Hunt the amount of the debt due to the mortgagee, as it seems that the proper relief to which the plaintiff would be entitled would be a judgment foreclosing the mortgage and directing a sale of the mortgagor's interest in the trust property. In an action to foreclose the mortgage there would be presented the question as to whether or not there ever was a valid mortgage or lien created upon this property; and I do not understand that the English judgment is sufficient to prove the actual existence and delivery of the mortgage. Upon the trial the defendants attempted to show that the mortgage was delivered to a solicitor for the purpose of obtaining a loan of money, but no loan of money was ever obtained, and no money paid to the defendants by either the mortgagee or by the solicitor to whom it was delivered for the purpose of obtaining a loan of money. All of this testimony was excluded by the learned trial judge upon the ground that the English judgment was conclusive as to the delivery of the mortgage, and that the plaintiff legally acquired title thereto. Considering the form of the English judgment and the sole question presented to the court upon the trial of that action, I do not think that the force of the English judgment applied so as to estop the defendants from proving that there was never a valid delivery of the mortgage, and that as between the mortgagor and the mortgagee, it never became a valid and existing lien upon the mortgaged property. Full effect and credit can be given to the English judgment as establishing a common-law liability in favor of the plaintiff against the defendant without extending the force of that judgment to the existence of a valid lien in favor of the creditor upon the defendants' interest in this trust property. There is no question of estoppel, as the plaintiff's testator never saw this mortgage or heard of it until after he had advanced the money to the English solicitor and the solicitor had become bankrupt, and neither the plaintiff's testator nor the mortgagee advanced any money on the mortgage or any recitals therein. It is perfectly apparent from the evidence that the plaintiff's testator's money which was placed in the hands of the so-

licitor for investment was not itself paid by the solicitor to the defendants, and .the attempted assignment of this mortgage to the plaintiff's testator was never consummated until after the solicitor had become bankrupt and had swindled the plaintiff's testator out of the money which had been entrusted to him. There can be no question but that as between the mortgagor and an assignee of the mortgage all of the equities as between the original mortgagor and mortgagee are open for investigation; and, upon the facts here proved, it seems to me that there was no justification for a finding that this mortgage had ever been actually delivered to the plaintiff's testator, or that it ever created an existing lien, either in favor of the original mortgagee, the solicitor to whom the mortgage was subsequently assigned, or the plaintiff's testator. The equities in this case are strongly with the defendants. It seems to me to be greatly extending the force and effect of the English judgment to hold that it was conclusive evidence of the delivery of the mortgage, and that it created a valid and existing lien upon the defendants' interests in this trust property. I do not think, therefore, that this judgment can be sustained.

We are then presented with the question as to how far the former decision of this court upon the appeal from the judgment overruling the demurrer to the complaint disposes of the questions heretofore discussed. I do not understand that the court determined the form of the judgment to which the plaintiff would be entitled if the facts alleged in the complaint were proved. Nor do I understand the court to have decided that this judgment was conclusive evidence of the validity of the mortgage and that it created a lien upon the defendants' interest in the estate. The court did decide that there was a good cause of action alleged in the complaint. The complaint alleged the execution and delivery of the mortgage and that the plaintiff was the owner and holder thereof. The questions that I have discussed, I do not think, therefore, were directly presented to the court on the former appeal; nor do I understand that the court determined these questions.

My conclusion is that the judgment appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event.