In the Matter of the Estate of JOSEPH PULITZER, Deceased.*

Surrogate's Court, New York County, August 17, 1934.

*Vincent L. Leibell,* special guardian for male infant remaindermen.

*Jackson, Fuller, Nash & Brophy* [*John G. Jackson* and *Stephen P. Nash* of counsel], for the petitioner.

*Thomas I. Sheridan,* special guardian of female infant remaindermen.

*Rogers H. Bacon,* for the trustees.

* See, also, 148 Misc. 116.

FOLEY, S. A further question of the construction of the will and codicils of the testator arises in this proceeding. The controversy involves the so-called " Newspaper Trust " created by Mr. Pulitzer. Prior decisions construing the terms of the testamentary instruments respecting this trust may be found in *Matter of Pulitzer* (139 Misc. 575; affd., 237 App. Div. 808) and in my supplemental decision in *Matter of Pulitzer* (140 Misc. 572; affd., 237 App. Div. 808).

The assets of the trust consisted of the stock of the Pulitzer Publishing Company of St. Louis, Mo., which published the *Post Dispatch,* and the stock of the Press Publishing Company of New York, which published the *World* and the *Evening World.*

In my former decision (139 Misc. 575; affd., *supra*) I discussed and determined various questions raised by the trustees as to the construction of the will and codicils and the propriety, price and manner of sale of the newspapers and other assets of the Press Publishing Company. Four main questions were presented at that time, but one of them is not material in the pending proceeding. The three remaining questions were as follows:

(a) Regardless of any prohibition or limitation contained in the will and codicils, had the trustees, in the then existing exigency, power and authority to sell the assets of a company, the stock of which was included in the trust?

(b) If a prohibition was contained in the will, had the Surrogate's Court, under its equitable jurisdiction, the power to modify the terms of the trust and authorize the sale of such assets by the trustees?

(c) Did the proofs submitted to the surrogate justify the exercise of that power in the emergency?

In answer to these three questions, I held that the trustees, as corporate officers and holders of the estate stock, had the power and general authority to participate in the sale of the property of the Press Publishing Company, and that the equitable powers of the Surrogate's Court should be invoked to generally authorize them to make such a sale. I held further that there was an implied power of sale in the will which in the then existing crisis might be exercised by the trustees and that the proofs presented to the surrogate as to the financial condition of the company, its diminishing assets and increasing loss of revenue created a duty in the trustees to act for the protection of the beneficiaries of the trust.

Pursuant to this decision the newspapers and certain other assets were sold by the Press Publishing Company.

The immediate question here involves the power of the children of Mr. Pulitzer, under the provisions of article eleventh of the

first codicil and article twenty-first of the will, (a) to appoint the remainder of the stock of the Press Publishing Company, or (b) to appoint the remainder of the stock of the Pulitzer Publishing Company or the proceeds of its sale.

In my opinion, no power of appointment exists in any of the children of the testator, over the stock of either of these companies or the proceeds of the sale of the stock of the Pulitzer Publishing Company.

As to the Press Publishing Company the basis of my determination that no power of appointment exists, is the fact that the power of appointment contained in article eleventh of the first codicil was inseparably interwoven with those provisions of the will and codicil which directed the continued publication of the newspapers and anticipated a plan of management by certain specially selected male descendants after the termination of the trust. It is significant also that the special power of appointment which dealt with the disposition of the Press Publishing Company stock was not included in the will but was added by the first codicil. In that instrument also the direction to continue publication was enlarged and made more emphatic than in the will. The command of the testator in the first codicil reads as follows: " I particularly enjoin upon my sons and my descendants the duty of preserving, perfecting and perpetuating ' The World ' newspaper, (to the maintenance and upbuilding of which I have sacrificed my health and strength) in the same spirit in which I have striven to create and conduct it as a public institution, from motives higher than mere gain, it having been my desire that it should be at all times conducted in a spirit of independence and with a view to inculcating high standards and public spirit among the people and their official representatives, and it is my earnest wish that said newspaper shall hereafter be conducted upon the same principles."

The provisions of article eleventh of the first codicil created a limited and distinctive power of appointment in the children of Mr. Pulitzer over the stock of the Press Publishing Company, but this power was clearly conditioned upon the continued publication of the newspapers and contemplated the retention of the newspapers as assets of the company until the termination of the trust. The testator had planned an extensive and elaborate arrangement for the continued family control of the New York *World* by his male descendants. That control was plainly designed to last as long as our statute against perpetuities would permit. It was planned further that after the expiration of the trust, the management of the newspapers would become vested in certain specially selected male descendants. So long as these New York newspapers would continue to be published, the dead hand of

Mr. Pulitzer, under his testamentary plan, would control their management. Economic necessity destroyed Mr. Pulitzer's program, and along with the imperative sale of the principal assets of the Press Publishing Company, every restriction contained in the will and codicils relating to the appointment of the stock and management of the newspapers was nullified. Thus, there were certain provisions of the " Newspaper Trust " which permitted participation by the editors or managers of the *World* in the income of the trust fund. These provisions necessarily failed when the newspapers were sold and when their publication was surrendered by the trustees of the estate. (*Matter of Pulitzer*, 140 Misc. 572; affd., 237 App. Div. 808.)

A parallel situation occurs, not infrequently, in probate courts. A devise of the home of the testator is made in trust or upon legal life estate, with the privilege to his children or other members of the family to occupy the dwelling. The testamentary restrictions or privileges become of no effect, where the property has been disposed of by voluntary sale under the terms of the will, or by compulsory disposition under the law. When the realty ceases to become an asset of the estate, the subordinate conditions in the will attached to its use are rendered ineffective and the courts, in the absence of specific directions of the testator, are powerless to supply substitute benefits.

No impairment of the general plan for the inheritance of the remainder results from the nullification of this special power of appointment, since the testator provided in article sixth of the first codicil for a thorough and comprehensive plan for the vesting of the remainder which operates completely in the absence of the exercise of the power of appointment.

Since article eleventh of the first codicil has become utterly ineffective in its application to the Press Publishing Company stock, a subordinate question arises as to whether article twenty-first of the will, which confers a wider power of appointment, applies to the proceeds of the sale of the Press Publishing Company stock or to the Pulitzer Publishing Company stock or its proceeds.

In my opinion, under the provisions of that article, no power of appointment was vested in the children of the testator over the stock of the Pulitzer Publishing Company or the proceeds of the sale of the stock of either of the companies. That article of the will conferred a power of appointment which was limited to a special form of trust and one which was utterly different in its terms from the " Newspaper Trust." Article twenty-first reads as follows: " Whenever, by the terms of my aforesaid Will, I shall have created a trust for the benefit of any of my descendants and by the terms

of the trust provided that upon the death of such descendant the remainder should vest in the issue of such descendant, I direct that such remainder shall be subject to a power of appointment by the descendant so dying among his or her issue absolutely or if permitted by law in trust, and that the descendants so dying may by a last Will and Testament or instrument in the nature thereof limit and appoint among his or her issue absolutely or if permitted by law in trust the share that such issue shall take."

It will be noted that a power of appointment was available only where the trust was created for the life of one of the testator's descendants (either children or other issue) and where by the terms of the trust the remainder was to vest in the issue of such descendant upon his or her death. There were various trusts created under the will for the benefit of the sons and daughters with directions to pay the income, upon the fractional share or the pecuniary amount placed in trust, to the respective son or daughter for life. Upon his or her death, the remainder was to vest in his or her issue. Mr. Pulitzer gave to each son or daughter or other descendant who was the life tenant of this typical trust, a power of appointment by will or by an instrument in the nature of a will to appoint the specific persons within the class of issue. In other words, the life tenant could select among the class of issue the beneficiaries of any or all of the remainder. In default of the exercise of this power, all the issue of the particular life tenant, under the terms of the will, were to take.

The terms of the " Newspaper Trust " are fundamentally different from the typical trust just described. The period of suspension of the " Newspaper Trust " was not limited to the specific life of a child or descendant entitled to the income of a specific share of the trust. It was measured by the lives of the two youngest sons of the testator. Mr. Pulitzer left three sons, Ralph, Joseph, Jr., and Herbert. Joseph, Jr., and Herbert were the youngest of the three and their lives measured the trust. The beneficiaries of the life income were the three sons. The two daughters were excluded from participation in the income. Yet the male descendants of both sons and daughters were entitled to participate in the remainder at the termination of the trust. Upon the death of a descendant who was entitled to participation in the income, the remainder did not vest automatically in his issue, but was postponed for the specified term of the trust. The remainder was clearly contingent and the class of takers was to be ascertained from those surviving at the date of the termination of the trust. (*Matter of Buechner*, 226 N. Y. 440.)

If the power of appointment in article twenty-first applied to the " Newspaper Trust " it would only be available to the son who was the survivor of the two measuring lives. It could apply to no others. It would not have been available to the son whose life constituted the first measuring life because of the hiatus between his death and the death of his brother. For similar reasons it could not have applied to the son Ralph if he died during the period of the trust. Nor could it have applied to him if he survived the expiration of the trust for under the terms of the remainder, he became entitled to an outright share of the corpus. It could not have applied to a daughter who died before the expiration of the two measuring lives. Nor could it have applied to either of the daughters, in the event they survived the expiration of the period of the trust, since the appointment was to be by will or by an instrument " in the nature " of a will, and the ascertainment of the class of remaindermen, designated under the will of the donee of the power, would have necessarily caused a further illegal suspension beyond two lives in being. In this connection I specifically hold that an instrument in the nature of a will under Mr. Pulitzer's testamentary instructions and under the law of New York comprehended a will or codicil and no other form of instrument. (*Farmers' Loan & Trust Co.* v. *Mortimer*, 219 N. Y. 290; *Newton* v. *Hunt*, 134 App. Div. 325; affd., 201 N. Y. 599, and distinguishing *Newton* v. *Jay*, 107 App. Div. 547; *McFall* v. *Kirkpatrick*, 236 Ill. 281; *Matter of Broad*, L. R. 2 Ch. [1901] 86; Remsen, Preparation of Wills and Trusts [2d ed.], p. 348; Sudgen Powers [8th ed.], p. 230.)

It is unnecessary to discuss at length the many other differentiations of the " Newspaper Trust " which took it out of the terms of article twenty-first of the will.

I accordingly hold that the succession to the remainder of the " Newspaper Trust " is not affected in any manner by the wills of the sons and daughters or other descendants of the testator; that all the stock and the proceeds of the sale of the stock within the " Newspaper Trust " pass under the provisions of the sixth article of the first codicil and that such remainder provisions are valid and effective.

I hold further that no authority whatsoever to exercise any form of power of appointment, as to any of the assets of this trust, is conferred upon any of the children or any of the descendants of the testator.

Submit decree on notice construing the will accordingly.