Ronald GLAZER, on his own behalf and on behalf of a class of other persons similarly situated, Plaintiff-Appellant,

v.

NATIONAL COMMODITY RESEARCH AND STATISTICAL SERVICE, INC., et al., Defendants-Appellees.

No. 74–1861.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1975.

Decided Jan. 7, 1977.

Rehearing and Rehearing En Banc Denied March 16, 1977.

Philip S. Wolin, Jeffrey Schulman, Chicago, Ill., for appellant.

Lawrence E. Nerheim, Gen. Counsel, James H. Schropp, Atty., S.E.C., Washington, D.C., for amicus curiae.

David F. Silverzweig, Joel J. Bellows, Chicago, Ill., for appellees.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and BRYAN, Senior District Judge.*

FAIRCHILD, Chief Judge.

This is an appeal from a judgment dismissing plaintiff's complaint against defendants, collectively referred to as NATCOM. The critical issue is whether the alleged formation of a contract between NATCOM and plaintiff (and others) was a sale of a security within the meaning of the Securities Act of 1933 and the Securities Exchange Act of 1934. The district court decided that the options which were the subject of the contract were not securities. *Glazer v. National Commodity Res. & Stat. Serv., Inc.,* 388 F.Supp. 1341 (N.D.Ill.1974). There is nothing to be gained by repetition of material in that opinion, and we adopt it, adding only the following observations.

We look to the averments of the amended complaint for the description of the rights sold by NATCOM and purchased by plaintiff. No documents are set forth. It is alleged that plaintiff and others deposited funds with NATCOM for the purpose of purchasing options to purchase commodities future contracts from NATCOM. According to the amended complaint, "commodity option" refers to a put and/or call option. "Call option" refers to a document given in exchange for a premium evidencing the right to buy a commodities future contract from NATCOM at a fixed price before a specific date and time. "Put option" refers to a document given in exchange for a premium, evidencing the right to sell a commodities future contract to NATCOM at a fixed price before a fixed date. "Premium" refers to the cost of purchasing the option, which funds are directly paid to NATCOM.

* The Honorable Frederick van Pelt Bryan of the Southern District of New York is sitting by designation.

Assuming that NATCOM performs its contracts, profit for a purchaser depends on the terms of the option, the amount of the premium, the course of the market, and the purchaser's choice of the time to exercise the option. The profit does not depend on the efforts or skill of NATCOM. Exercise of an option would call upon NATCOM to produce and sell to the purchaser a specified commodity future contract, or to buy one from the purchaser, or, as the parties suggest, to settle in cash for the purchaser's profit. NATCOM's ability to perform would depend upon its financial resources. Any skill it would exercise in trading in futures, or other goods, would be reflected in the resources available for fulfillment of its obligations to the purchasers.

The SEC, as amicus, argues that "the interests allegedly sold by defendants are securities within the definition of that term contained in the federal securities laws." It contends that the relationship alleged may properly be defined as an investment contract, an interest commonly known as a security, or a note or evidence of indebtedness. At the same time, however, and asserting distinctions we are unable to perceive, the SEC says: "It bears emphasis that the Commission does *not* suggest that the offer or sale of commodities, or commodities futures, or *bona fide* options on commodities futures, without more, is the offer or sale of securities."

The foundation of the SEC position appears to be that because NATCOM represented itself to be a trader in commodity futures, and that representation was allegedly false, and because the extent to which NATCOM would be able to make good on its obligations would be limited by NATCOM's success in making money out of other uses of its resources, the purchasers actually bought an interest in the NATCOM assets. Plaintiff may well be able to prove, under its complaint, that NATCOM's false representations of ability to perform amounted to fraud. We are unable to perceive how the fact that the purchase of an option was fraudulently induced transforms the option into a security.

NATCOM has asked us by motion to determine that this appeal is frivolous and to award damages and double costs. Although we affirm the judgment, we consider that the appeal presented an arguable question, and deny the motion.

The judgment is affirmed.