**FAIRCHILD, ARABATZIS & SMITH, INC. and Steven M. Arabatzis, Plaintiffs,**

**v.**

**PROMETCO (PRODUCE & METALS) CO., LTD. and J. R. Charbit, Defendants.**

**No. 78 Civ. 3266.**

United States District Court,
S. D. New York.

May 9, 1979.

---

**3.** This case has been set for rehearing by the Third Circuit en banc on May 17, 1979.

David C. Buxbaum, P. C., New York City, for plaintiffs.

Alan S. Kramer, P. C., New York City, for defendants.

OPINION

GAGLIARDI, District Judge.

Plaintiffs Fairchild, Arabatzis & Smith, Inc. ("FAS") and Steven M. Arabatzis have commenced this action for damages alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and common law fraud. Jurisdiction is based upon 15 U.S.C. § 78aa and 28 U.S.C. § 1332. Defendant Prometco (Produce & Metals) Co., Ltd. ("Prometco") has counterclaimed against FAS to recover upon a judgment of the United Kingdom's High Court of Justice. Defendants Prometco and J. R. Charbit have moved for summary judgment dismissing the complaint, and Prometco has moved for summary judgment on its counterclaim. Plaintiffs FAS and Arabatzis have cross-moved for summary judgment on their complaint, and FAS has moved to dismiss Prometco's counterclaim. For the reasons stated below, plaintiffs' motions are denied and defendants' motions are granted.

*Statement of Facts*

Plaintiff FAS is a New York corporation which operates as a commodity futures commission merchant. Plaintiff Arabatzis is an officer of FAS. At a meeting with defendant Charbit in New York in July 1977, Arabatzis, on behalf of FAS, agreed to purchase through Prometco commodity options for futures contracts to be performed in the United Kingdom. Option purchases were made during the period September 1977 through March 1978. FAS defaulted on payments due Prometco relating to these options, and Prometco instituted an action against FAS and Arabatzis in the High Court of Justice, Queen's Bench Division, in the United Kingdom for $189,-000, the amount allegedly due. Notice of the action was provided to FAS and Arabatzis by service of the writ of summons (complaint) at FAS' New York offices.

Because Arabatzis failed to appear and defend in the British court, a default judgment was entered against him in June 1978. An action to enforce the judgment has been commenced in New York Supreme Court. FAS, however, through its London solicitors filed a memorandum of appearance in the action which stated as follows:

This appearance stands as unconditional unless the defendant applies within 28 days to set aside the writ, or service thereof, and obtains an order to that effect.

By "summons" (motion) filed August 25, 1978, FAS sought an order setting aside service of the writ of summons on the grounds of insufficiency of service of process and lack of personal jurisdiction. FAS, by its solicitors, filed voluminous affidavits in which it claimed that: 1. the contract in question was made in New York when Charbit and Arabatzis discussed FAS' obtaining London options from Prometco in

July 1977; 2. New York law governed its performance; 3. FAS and Arabatzis telephoned their orders to Prometco in New York rather than telexing them to Prometco in London; 4. New York was the forum conveniens; and 5. service had not been made upon a proper agent of FAS as required by New York's Civil Practice Law and Rules. FAS' affidavits also raised the issue of Charbit's fraudulent conduct, *i. e.*, that Charbit wilfully misrepresented that the options Prometco would sell to FAS would be registered with various London commodity exchanges. FAS claimed that Prometco furnished to FAS documents purportedly issued by the various exchanges but which were not, in fact, genuine.

On October 9, 1978, following a three-day hearing, the High Court of Justice, per Mr. Justice Mocatta, dismissed FAS' summons. The court determined that service had been made upon a proper agent of the corporation, and that extraterritorial service (and personal jurisdiction) were properly premised upon Order 11, Rule 1(f)(i) and (iii) of the Rules of the Supreme Court.[1] Finding that FAS had placed the orders to Prometco's London office via telex, the court concluded that the contract between the parties had been made in the United Kingdom. In addition, the court found England to be the forum conveniens. The judgment entered on October 9, 1978 was not, however, a final determination on the issue of jurisdiction. Under British law, the court need only decide that plaintiff has made out a prima facie case under Order 11 for it to find jurisdiction initially. The defendants may reopen the issue of jurisdiction at trial or on summary judgment, and final judgment cannot be pronounced unless the court is satisfied that it does have personal jurisdiction.

By order dated October 9, 1978, Justice Mocatta gave leave to Prometco to serve FAS' solicitors on short notice with Prometco's summons for summary judgment pursuant to Order 14 of the Rule of the Supreme Court.[2] FAS chose not to appear at the hearing of October 13, 1978. Prometco relied upon the twenty-seven affidavits and accompanying exhibits, which together comprised over 1,000 pages, previously filed by the parties. The court entered judgment for Prometco on the contract pursuant to Order 14 in the amount of $189,331.81 plus interest from April 27, 1978 and costs of £5,000. No written decision was filed, nor was any oral decision transcribed.

Three months after Prometco commenced its action against Arabatzis and FAS in the High Court of Justice and two months after Prometco brought suit in New York Supreme Court to enforce the English judgment against Arabatzis, FAS and Arabatzis instituted this lawsuit against Prometco

1. Order 11, Rule 1(f)(i), (iii) provides in pertinent part:

 [S]ervice of a writ, or notice of a writ, out of the jurisdiction is permissible with the leave of the Court in the following cases, that is to say—
 (f) if the action begun by the writ is brought against a defendant not domiciled or ordinarily resident in Scotland to enforce, rescind, dissolve, annul or otherwise affect a contract, or to recover damages or obtain other relief in respect of the breach of a contract, being (in either case) a contract which—
 (i) was made within the jurisdiction . .

 (iii) is by its terms, or by implication, governed by English law.

2. Order 14, Rule 1, which is analogous to Rule 56 of the Federal Rules of Civil Procedure, provides in pertinent part:

 Where in an action to which this rule applies a statement of claim has been served on a defendant and that defendant has entered an appearance in the action, the plaintiff may, *on the ground that that defendant has no defence* to a claim included in the writ, or to a particular part of such a claim, or has no defence to such a claim or part except as to the amount of any damages claimed, apply to the Court for judgment against that defendant.

 Order 14, Rule 3 states in part:
 Unless on the hearing of an application under Rule 1 either the Court dismisses the applica-*tion or the defendant satisfies the Court with* respect to the claim, or the part of a claim, to which the application relates that there is an issue or question in dispute which ought to be tried or that there ought for some other reason to be a trial of that claim or part, the Court may give such judgment for the plaintiff against that defendant on that claim or part as may be just having regard to the nature of the remedy or relief claimed.

**614**

and Charbit. The complaint contains two separate causes of action, one for common law fraud and the other for violation of the federal securities laws. For their state claim, plaintiffs allege that Charbit and Prometco defrauded them when Charbit deliberately misrepresented that the London commodity options sold to plaintiffs were registered with various London commodity exchanges. For their federal securities law claim, plaintiffs allege that Charbit intentionally misrepresented to plaintiffs that: 1. he had an interest in several corporations including Prometco; 2. he could sell registered London options to FAS through his various corporations; and 3. he would send FAS confirmations from London that the options were registered. Plaintiffs seek compensatory and punitive damages.

*Discussion*

I. *Defendants' Motion for Summary Judgment Dismissing the Complaint*

A. *The Federal Claim*

 Plaintiffs invoke the judicially implied private right of action pursuant to § 10(b) of the Securities Exchange Act of 1934 to challenge defendants' allegedly fraudulent activities in trading commodity options. For transactions occurring prior to the enactment of the Commodity Futures Trading Act of 1974 ("CFTC Act") there is a clear split of authority over whether commodity options are "securities" within the meaning of the federal securities laws. *Compare SEC v. Commodity Options International Inc.,* 553 F.2d 628 (9th Cir. 1977) *and SEC v. American Commodity Exchange,* 546 F.2d 1361 (10th Cir. 1976) *with Glazer v. National Commodity Research & Statistical Service, Inc.,* 547 F.2d 392 (7th Cir. 1977), *aff'g.,* 388 F.Supp. 1341 (N.D.Ill. 1974). The Court of Appeals for this Circuit has not decided this issue. *British American Commodity Options Corp. v. Bagley,* 552 F.2d 482, 486 n.7 (2d Cir.), *cert. denied,* 434 U.S. 938, 98 S.Ct. 427, 54

L.Ed.2d 297 (1977). Since the enactment of the CFTC Act, however, trading in commodity options is no longer subject to a private action under the securities laws. *Bartels v. International Commodities Corp.,* 435 F.Supp. 865 (D.Conn.1977). In *Bartels, supra,* Judge Newman persuasively reasoned that the CFTC Act removed commodity options from the scope of the implied private right of action under the securities laws. Dissatisfied with previous attempts to regulate commodity options under existing legislation, Congress established an independent agency, the Commodity Futures Trading Commission, with exclusive jurisdiction over regulation of commodity option transactions. The legislative history conclusively proves that Congress intended that commodity options and securities regulation be relegated to distinct regulatory spheres. *Bartels, supra,* 435 F.Supp. at 869. The court thus concludes that plaintiffs § 10(b) claim fails to state a cause of action and must be dismissed.[3]

B. *The Common Law Fraud Claim*

Defendants have moved for summary judgment dismissing plaintiffs' common law fraud claim on the ground that the doctrine of collateral estoppel bars plaintiffs from raising factual issues that were necessarily determined adversely to them in the prior action. Defendants also contend that plaintiffs have failed to make a sufficient showing of damages, a necessary element of the common law fraud claim, to withstand a motion for summary judgment.

1. *Collateral Estoppel Effects of the British Judgment*

 Because the sole jurisdictional basis for the fraud claim is diversity of citizenship, New York state law determines the extent of the preclusive effect of the British judgment. *British Midland Airways v. International Travel, Inc.,* 497 F.2d 869, 871 n.2 (9th Cir. 1974); *Somportex Ltd. v. Phil-*

**3.** Moreover, for the reasons set forth *infra,* the doctrine of collateral estoppel prohibits the relitigation of FAS's allegations of fraud in this action. Thus, entirely apart from FAS's failure to state a cause of action under § 10(b), the British judgment estops it from establishing the basic elements of their § 10(b) claim.

*adelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972). New York distinguishes between judgments rendered by her sister states, to which it is constitutionally obligated to give full faith and credit, and those rendered by foreign countries, which it will recognize only as a matter of comity. Nevertheless, a foreign judgment when sued upon in New York normally precludes a retrial upon the merits unless the judgment is tainted with fraud or with an offense against public policy or the foreign court had no jurisdiction over the person of the defendant or of the subject matter of the action. *Johnston v. Compagnie Generale Transatlantique*, 242 N.Y. 381, 152 N.E. 121 (1926). *Accord, Cowans v. Ticonderoga Pulp & Paper Co.*, 219 App. Div. 120, 219 N.Y.S. 284, (3d Dept.), *aff'd.*, 246 N.Y. 603, 159 N.E. 669 (1927); *Falcon Manufacturing (Scarborough) Limited v. Ames*, 53 Misc.2d 332, 278 N.Y.S.2d 684, 686 (1967).[4] Article 53 of New York's Civil Practice Law and Rules, the Uniform Foreign Country Money Judgments Recognition Act, codifies this long-standing New York case law permitting the enforcement of foreign country money judgments. *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1318 n.6 (2d Cir. 1973). Lack of personal jurisdiction and the procurement of the judgment by fraud are among the statutory grounds for nonrecognition. C.P.L.R. §§ 5304(a)(2), (b)(3). Plaintiffs attack the British judgment on both of these grounds.

■ Plaintiffs' "fraud" challenge is easily disposed of because it rests upon a basic misapprehension of the scope of the statutory exception. Whether or not the defend-

ants engaged in a fraud with respect to the commodity transactions about which plaintiff complains is entirely irrelevant to the recognition of the British judgment. *Fuhrmann v. Fanroth*, 254 N.Y. 479, 482, 173 N.E. 685 (1970). "The fraud must relate to matters other than issues that could have been litigated and must be a fraud on the court." *Overmyer v. Eliot Realty*, 83 Misc.2d 694, 371 N.Y.S.2d 246, 258 (1975). No such contention is raised here.

■ On the issue of lack of personal jurisdiction, it must be noted that FAS' actions in the British court preclude it from the collateral attack of that court's judgment on jurisdictional grounds. CPLR § 5305(a)(2) provides that:

> The foreign country judgment shall not be refused recognition for lack of personal jurisdiction if . . . the defendant voluntarily appeared in the proceedings, other than for the purpose of protecting property seized or threatened with seizure in the proceedings or of contesting the jurisdiction of the court over him.

The memorandum of appearance filed on FAS' behalf in the British action expressly provided that FAS' appearance was unconditional unless it applied for and *obtained* an order setting aside the writ of summons within a specified period. Having failed to obtain such an order, FAS "voluntarily appeared" in the British action.[5] Moreover, by litigating and losing the issue of personal jurisdiction in Britain, FAS has no right to contest the jurisdiction of that court in a collateral action. *Sprague & Rhodes Commodity Corp. v. Instituto Mexicano del Cafe*, 566 F.2d 861, 863 (2d Cir. 1977) (per curiam). *See Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); *Bald-*

---

4. In *Johnston, supra*, the New York Court of Appeals rejected reciprocity—the willingness of the foreign jurisdiction to recognize New York judgments—as a condition precedent to the exercise of comity, 242 N.Y. at 386, 152 N.E. 121, thereby forsaking the Supreme Court's suggestion in *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), that comity rests upon reciprocity. This court need not determine, therefore, whether a British court would recognize a New York judgment under the circumstances of this case.

5. FAS was not without its procedural remedy if it wished to appear solely for the purpose of challenging jurisdiction of the British court. Defendants' expert, a London solicitor, advises the court that *a party may object to jurisdiction* without entering an appearance at all, pursuant to Order 12, Rule 8, or by entering a conditional appearance which is *not* treated as unconditional if the objection fails pursuant to Order 12, Rule 7(2).

win v. Iowa State Traveling Men's Ass'n., 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931); Vander v. Casperson, 12 N.Y.2d 56, 236 N.Y.S.2d 33, 187 N.E.2d 109 (1962). At least as against FAS,[6] therefore, the British judgment would clearly be recognized by a New York court. The important question, however, is the extent to which New York would accord preclusive effect to that judgment under the principles of res judicata and collateral estoppel.

It is unsettled whether an American court will apply the foreign court's rules of res judicata and collateral estoppel when called upon to recognize the foreign court's judgment. See Restatement, Conflict of Laws 2d § 98, comment f. The New York courts which have given preclusive effect to foreign country judgments have generally not specified the source of the applicable law. See, e. g., In re Zietz' Estates, 207 Misc. 22, 135 N.Y.S.2d 573, 577–78 (Surr.Ct.1954), aff'd, 285 App.Div. 1147, 143 N.Y.S.2d 602 (2d Dep't 1955), appeal dismissed, 1 N.Y.2d 748, 152 N.Y.S.2d 295 (1956); Newton v. Hunt, 59 Misc. 633, 112 N.Y.S. 573, 574–75 (1908), modified, 134 App.Div. 325, 119 N.Y.S. 3 (1st Dep't 1909), aff'd, 201 N.Y. 599, 95 N.E. 1134 (1911). This court need not address this issue for it appears that British law and New York law are not in conflict on this point.

Defendant's expert has submitted an affidavit on British law and has attached thereto copies of pages from a treatise on British law supporting the general proposition that a party is precluded from relitigating matters determined adversely to him in a prior action. 15 Halisbury's Laws of England 184–87 (3d ed.). This is in accord with New York's formulation of the doctrine of collateral estoppel: when an issue that has necessarily been decided in the prior action is decisive of the subsequent action and the party seeking to avoid the estoppel had a full and fair opportunity to litigate the issue in the prior action, that party is bound by the prior decision. Schwartz v. Public Administrator of the County of Bronx, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969). Had FAS been able to establish its defense of fraud to the action on the contract, Prometco's recovery thereon would have been barred. Implicit in the High Court's granting of Prometco's motion for summary judgment on its contract claim was a finding that FAS' defense of fraud was meritless. Having litigated and lost this issue, FAS is barred from raising it once again. Schuylkill Fuel Corp. v. B & C Nieberg Realty Corp., Inc., 250 N.Y. 304, 306–07, 165 N.E. 456, 457 (1929); Bluestone v. Jones, 233 N.Y.S.2d 146, 149 (Sup.Ct. 1962).

FAS contends, however, that the doctrine of collateral estoppel ought not apply here because it withdrew from the British proceeding prior to the hearing on Prometco's motion and the doctrine applies only to matters which have been "actually litigated." This argument ignores the fact that FAS squarely raised its fraud defense in the lengthy affidavits submitted in support of its jurisdictional objections and those affidavits were still before the High Court when it rendered judgment for Prometco on the contract. Even if the British judgment were construed to be based upon FAS' default, a construction which is belied by the terms of the judgment itself,[7] the

---

**6.** As Arabatzis did not enter an appearance in the previous action, he may properly attack the jurisdiction of the British court in this proceeding. See, e. g., Falcon Manufacturing (Scarborough) Ltd. v. Ames, 53 Misc.2d 332, 278 N.Y. S.2d 684 (Civ.Ct.1967); Plugmay Ltd. v. National Dynamics Corp., 48 Misc.2d 913, 266 N.Y.S.2d 240 (Civ.Ct.1966). Indeed, in Prometco's action on the judgment before Justice Stecker of the New York Supreme Court, a hearing has been scheduled on the factual issue as to whether Arabatzis' actions in Britain were sufficient to confer jurisdiction over him. In light of this court's conclusion that Arabatzis has failed to make out a cause of action for fraud, see infra, it need not determine whether the British court had personal jurisdiction over Arabatzis requiring the recognition of its default judgment against him.

**7.** The judgment of October 13, 1978 states: [FAS] having entered appearance herein and the Court under Order 14, Rule 3, ordered that judgment as hereinafter provided be entered for plaintiff against the defendant.

doctrine of collateral estoppel would nevertheless operate to bar FAS' fraud claim. In Britain, a defendant who has defaulted in the previous action is estopped from setting up a defense in the subsequent action which was necessarily decided by the previous judgment. 15 Halisbury, *supra*, at 186. Similarly, notwithstanding the objections of several noted commentators, *see, e. g.*, 5 Weinstein, Korn & Miller, New York Civil Practice, § 5011.30 (1978 ed.); Rosenberg, *Collateral Estoppel in New York*, 44 St. John's L.Rev. 165, 173–77 (1969)[8], New York has long given default judgments collateral estoppel effect and considered them conclusive between the parties with regard to all matters essential to sustain the judgment. *See, e. g., Barber v. Kendall*, 158 N.Y. 401, 405–06, 53 N.E. 1 (1899); *Reich v. Cochran*, 151 N.Y. 122, 126–28, 45 N.E. 367 (1896); *119 Rosset Corp. v. Blimpy of New York Corp.*, 65 A.D.2d 683, 409 N.Y.S.2d 735, 736 (1st Dep't 1978); *Hambly v. Aetna Casualty & Surety Co.*, 51 A.D.2d 567, 378 N.Y.S.2d 632, 634 (2d Dep't 1976); *Trecot v. Taxter*, 69 Misc.2d 248, 329 N.Y.S.2d 139,

142 (1972); *Roberts v. Strauss*, 108 N.Y.S.2d 733, 734–35 (Sup.Ct.1951); *Adamik v. Adamik*, 190 Misc. 851, 75 N.Y.S.2d 824, 827 (1948). A finding of fraud in this action would be antithetical to Prometco's recovery on the contract in the former action. The British judgment necessarily determined the existence of the contract as a valid and binding obligation upon the plaintiffs, *i. e.*, that it was free from fraud. *Barber v. Kendall, supra*, 158 N.Y. at 405, 53 N.E. 1. The court thus concludes that the doctrine of collateral estoppel bars FAS from asserting its claim of common law fraud.[9]

■■■■■ An alternative basis for dismissing FAS and Arabatzis' fraud claim is their failure to establish damages—an essential element of the common law fraud cause of action—with sufficient specificity to withstand a motion for summary judgment. In New York, the plaintiff in an action for damages for fraud must show "actual pecuniary loss." *Dress Shirt Sales, Inc. v. Hotel Martinique Associates*, 12 N.Y.2d 339, 239

The reference to the Order and Rule, quoted above, which governs plaintiff's summary judgment implies that the court considered—and rejected—FAS' fraud defense.

8. These commentators have generally confined their criticism to the application of collateral estoppel to situations in which the defaulting party had little incentive to defend the prior action or in which the potential for surprise is great. This is hardly such a case. Prometco sought to recover approximately $190,000 in the British contract action; FAS' economic incentive to appear was obvious. Nor can FAS claim surprise; its recognition of the importance of the "fraud" issue in the determination of the rights of the parties is reflected in FAS' affidavits before the British court. In short, the claims asserted in the present and prior actions are "closely enough related to justify the conclusion that [FAS] should have foreseen the consequences in the present action of [its] failure to litigate [its] defenses in the prior action." *United States v. Martin*, 395 F.Supp. 954, 959 (S.D.N.Y.1975). *Accord, Overseas Motors, Inc. v. Import Motors Ltd., Inc.*, 375 F.Supp. 499 (E.D.Mich.1974), aff'd. 519 F.2d 119 (6th Cir.), cert. denied, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975); 1B J. Moore, Federal Practice, § 0.444[2] at 4005 (1978 ed.).

9. Defendant Charbit may avail himself of the preclusive effect of the prior judgment even

though he was not a party to the proceedings in Britain. The doctrine of "mutuality of estoppel" is a "dead letter" in New York, *B. R. DeWitt, Inc. v. Hall*, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 601, 225 N.E.2d 195, 198, (1967), at least where the party sought to be barred had a "full and fair opportunity" to litigate the issues involved. Prometco and Charbit's liability for fraud hinge, in part, on the identical issue—the nature of Charbit's representations to plaintiffs concerning the options. FAS' incentive to establish that Charbit had wilfully misrepresented the nature of the options was as great in the first action as now. Moreover, Charbit acted as Prometco's agent in soliciting FAS to purchase the commodity options. As the New York Court of Appeals has stated:

> In cases involving the relationship of principal and agent, master and servant, or indemnitor and indemnitee, the liability of more than one party turns on, or is dependent upon, identical issues. In such situations when the complaining party has been given a full opportunity to litigate those issues against one of the parties, and has been defeated on grounds other than a personal defense, he is not permitted to relitigate the same issue in a new action against the other.

*Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 151 N.Y.S.2d 1, 4, 134 N.E.2d 97, 99 (1956).

N.Y.S.2d 660, 663, 190 N.E.2d 10, 12 (1963). Although the complaint alleges without explanation that plaintiffs have incurred damages of $500,000, the sole affidavit submitted by plaintiffs in this action fails to show that plaintiffs actually incurred any injury or that any such injury was proximately caused by Charbit's alleged misrepresentations concerning the registration of the options. In their memorandum of law in opposition to defendants' motion for summary judgment, plaintiffs contend that they are "faced with substantial *potential* monetary damages" if the Commodity Futures Trading Commission is successful in an enforcement action against plaintiffs and that plaintiffs face reparations suits that *may* be brought by customers who purchased unregistered options from them. It is clear, therefore, that plaintiffs have not yet suffered any injury as a result of defendants' actions; they merely seek to recover damages for speculative injuries not yet incurred. Absent a showing of present out-of-pocket loss, plaintiffs' fraud claim must fall. *Lacks v. Lacks*, 30 Misc.2d 398, 217 N.Y.S.2d 655 (1971), *aff'd*, 16 A.D.2d 646, 227 N.Y.S.2d 895 (1st Dep't 1962), 12 N.Y.2d 268, 238 N.Y.S.2d 949, 189 N.E.2d 487 (1963).[10]

## II. *Prometco's Motion for Summary Judgment on its Counterclaim*

Prometco has counterclaimed against FAS on the British judgment. For the reasons set forth above, FAS has failed to establish any of the grounds for non-recognition of that judgment. Accordingly, Prometco's motion is granted.

### Conclusion

Defendants' motion for summary judgment dismissing the complaint is granted; plaintiffs' cross-motion for summary judgment on their complaint is denied. Prometco's motion for summary judgment on its

counterclaim is granted, and FAS' motion to dismiss the counterclaim is denied.

Let the clerk enter judgment dismissing the complaint and awarding Prometco judgment in the amount of $189,331.21 plus interest from April 27, 1978, and the dollar equivalent of £5,000.

So Ordered.

---

**10.** Plaintiffs cannot withstand a motion for summary judgment by resting upon the allegation of actual loss in their complaint. Rule 56(e), Fed.R.Civ.P., specifically prohibits plaintiffs from relying upon those allegations and requires them to submit affidavits setting forth specific facts showing that there is a genuine issue for trial. *See United States v. Pent-R-Books, Inc.*, 538 F.2d 519, 529 (2d Cir. 1976); *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972).